BREWER v. STATE.

Opinion delivered January 31, 1910.

LARCENY—FINDING LOST GOODS.—If the finder of lost articles neither knows nor has any means of ascertaining the owner, and appropriates them to his own use, he is not guilty of larceny, whatever may be his intent at the time; if he does know, or has the immediate means of ascertaining, who the owner is, there must be a felonious intent to steal at the time of the taking, in order to constitute larceny.

Appeal from Jackson Circuit Court; *Charles Coffin,* Judge, reversed.

*S. A. Moore,* for appellant.

*Hal L. Norwood,* Attorney General, and *William H. Rector,* Assistant, for appellee.

There was no error in the second instruction, and the eighth requested by the defendant was properly modified. Bishop's New Crim. Law § § 878-882; 1 Wharton, Crim. Law (10 ed.),

§ § 901-907; 3 Cox, C. C. 453; 33 Conn. 260; 8 Tex. App. 40; 19 Mo. 249; 116 Mass. 42; 29 O. St. 184.

McCULLOCH, C. J. The grand jury of Jackson County returned an indictment against defendant, Trigger Brewer, upon two counts, one charging him with the crime of grand larceny in stealing forty dollars in money, the property of J. B. Pritchard, and the other charging him with the crime of receiving stolen property. On a change of venue to Independence County he was tried and convicted of the crime of grand larceny, and appeals to this court.

The prosecuting witness testified, in substance, that he was a traveling salesman, and that one evening about 6:30 o'clock at Newport, in Jackson County, he entered the coach of a waiting railroad train standing at the station, after having purchased a ticket, which he placed in a pocket-book he calls his credential book, and which also contained his money, and that the book was in the hip pocket of his trousers; that he sat down beside a woman and conversed with her awhile, when defendant came in and talked to the woman a few minutes and then walked out of the train; that he saw a credential book in the defendant's hand as the latter left the train, but thought nothing of it until he missed his own book a few minutes later; that, after discovering the loss of his book, he went out to look for defendant, but did not find him until he came back in the coach; that he then walked up to defendant and demanded the book; that the latter denied having it, and that he then put his hand in defendant's pocket and drew out the book, with the money still in it. The book contained forty dollars in money. There was other evidence corroborating the testimony of this witness in each material feature.

Appellant testified that he was to some extent intoxicated that day, and found the pocket-book on the ground near the train and went into the coach with it in his hand, and so held it while he was talking to Pritchard and the woman, and that after he left the train he kept the book in his hand while he made a trip over to a restaurant. He testified that when he went back into the coach he had the pocket-book in his vest pocket, and when Pritchard took it out of his pocket and said "This is mine," he replied, "If it is, you could have had it before

now if you had said anything about it." Other witnesses testified that they saw defendant pick up the pocket-book off the ground as he started to get on the train, and that he spoke of it at the time. One witness said he remarked, "Some one has lost this book," and another that he said, "Look here what I have found," and another that he said, "I have found a book; do you know who it belongs to?"

The court gave the following, among other instructions, over defendant's objection: "2. If you believe from the evidence that the defendant found the pocket-book, and either knew or found out to whom it belonged, and on demand of the owner denied having it, or did not voluntarily return it to him, he would be guilty of larceny, and you should so find."

Defendant asked the following instruction, which the court over his objection modified by adding the words in italics: "8. If you believe from the evidence that the defendant found the pocket-book and contents, and within reasonable time thereafter made inquiry as to the ownership thereof, you should find the defendant not guilty as charged *unless you further find that he knew or soon learned who the owner was and denied having it.*"

Mr. Bishop, in discussing the offense of larceny in the finding and misappropriation of lost property, says: "Unless, therefore, there is larceny in the original taking, there can be none committed afterward. * * * The law gives to the finder a title in lost goods, but not full and unconditional; and so, if he takes them with the intent to steal them, he commits a larceny, unless this consequence is prevented by the operation of the principles now to be mentioned. A man, knowing the owner of goods, cannot lawfully pick them up, without returning them to him; but a man, not knowing the owner, can. The doctrine, therefore, is that if, when one takes goods into his hands, he sees about them any marks, or otherwise learns any facts by which he knows who the owner is, yet with felonious intent appropriates them to his own use, he is guilty of larceny; otherwise, not. Some of the cases say, if he knows who the owner is, or has the means of ascertaining; but the better form of the doctrine is as just set down, because every man by advertising and inquiring can find the owner if he is to be found, while the guilt of a

defendant must attach at the moment, if ever, without depending on an if." 2 Bish. Crim. Law, § 882.

' Prof. Wharton states the law on the subject thus: "When goods are lost—*i.· e.,* when the owner has no trace of them, and they show no· trace· of the owner—the finder has such a special property in them, that according to the now prevalent view, as will presently be more fully seen, even though he feloniously ·'ends to appropriate them when he finds them, it is not larceny. In other words, the mere subjective side is insufficient without the objective. To constitute larceny, there must be not only the intent to steal, but the thing taken must .give on its face grounds from which it may be reasonably believed that the owner can be found. If there be no indications of ownership, then the owner may be inferred to have abandoned the goods, and consequently to consent to the finder taking them. In this way we can reconcile the position now before us with the position that when felonious intent and trespass are united in taking a thing, there is larceny. There is no trespass in taking a thing abandoned." 1 Wharton, Crim. Law, § 901 (10 ed.).

In the note to section 909, the author states the rule to be as in other larceny cases, that there must be a felonious intent at the time of finding, and cites many cases in support.

The Supreme Judicial Court of Massachusetts, in an opinion by Judge Gray, then Chief Justice, said: "The finder of lost goods may lawfully take them into his possession; and if he does so without any felonious intent at that time, a subsequent conversion of them to his own use, by whatever intent that conversion is accompanied, will not constitute larceny. But if, at the time of first taking them into his possession, he has a felonious intent to appropriate them to· his own use and to deprive the owner of them, and then knows or has the reasonable means of knowing or ascertaining, by marks on the goods or otherwise, who the owner is, he may be found guilty of larceny." *Commonwealth* v. *Titus,* 116 Mass. 42. ·

An interesting and instructive discussion on this subject may be found in the case of *Griggs* v. *State,* 58 Ala. 425, where all the authorities. are reviewed.

Mr. Rapalje· in his .work on Larceny and Kindred Offenses, (§ 52) adopts the language of the Massachusetts court quoted

above with an addition which reaches to the precise point in the present case: "The finder of lost goods may lawfully take them into his possession; and if he does so without any felonious intent at that time, a subsequent conversion of them to his own use, by whatever intent that conversion is accompanied, will not constitute larceny. Larceny cannot be of lost goods by their finder, if his original taking was without a felonious intent, though followed by a felonious asportation; and a charge to the jury that if the defendant, when he found the property, knew or had the means of knowing the owner, and did not restore it to him, but converted it to his own use, he was guilty of larceny, is error, for the reason that, if defendant, when he found the property, meant to act honestly with regard to it, no subsequent felonious intention could make him guilty of larceny."

So the rule clearly deducible from the authorities is that if the finder of lost articles neither knows nor has any immediate means of ascertaining the owner, and appropriates them to his own use, he is not guilty of larceny, whatever ·may be his intent at the time. If he does know, or has the immediate means of ascertaining, who the owner is, there must be a felonious intent to steal at the time of the taking in order to constitute larceny; and a subsequently formed intent is not sufficient. The instructions hereinbefore quoted, given by the court, do not square. with this rule; for they undoubtedly conveyed to the minds of the jury the idea that if the defendant either knew or afterwards ascertained who the owner was, and denied having the pocketbook, or failed to voluntarily return it, this made him guilty of larceny.

The eighth instruction requested by defendant was incorrect in failing to embrace the idea of good faith in making inquiry for the owner or of the absence of a felonious intent at the time of the original taking, and the court might well have refused the instruction altogether. But the modification was incorrect, and rendered the whole instruction prejudicial to defendant, by telling the jury in effect that, notwithstanding he had made inquiry for the owner, if he afterwards learned who the owner was and denied having the pocket book, he would be guilty of larceny.

There was evidence to warrant a submission to the jury of the questions covered by these instructions, and the error of

the court was prejudicial. The court gave other correct instructions on this subject, but they were in conflict with those quoted above, and were therefore calculated to mislead the jury.

Reversed and remanded for new trial.