## Perdew et al. v. Commonwealth.

(Decided Oct. 8, 1935.)

B. J. BETHURUM and J. G. SMITH for appellants.

BAILEY P. WOOTTON, Attorney General, and RAY L. MURPHY, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE REES—Reversing.

Loren Perdew, Barlow Means, Porter Barnes, and Clifton York were indicted for unlawfully and feloniously confederating and banding themselves together for the purpose of doing a felonious act, and the indictment charged that in pursuance of said conspiracy they stole a lot of goods or merchandise of a greater value than $20, personal property of R. L. Higginbotham.

Higginbotham was a merchant in Albany, Ky., and Perdew owned a small store at Alpha, twelve miles from Albany on the Monticello road. Higginbotham had ordered a bill of goods from the Peters Shoe Company of St. Louis, Mo., which were shipped to him by parcel post. On April 13, 1934, while being carried on a mail truck from Monticello to Albany, the shoes, which were in three paper cartons, were lost at a point about one-fourth of a mile from Perdew's store. Joe Ragan, who

was employed by Perdew, and Claude Owens passed along the road in a wagon shortly after the shoes were lost. They saw the boxes on the side of the road, loaded them into the wagon and delivered them at Perdew's store, and told him that they had found them and directed him to deliver them to the owner if the owner could be found. About a month later Perdew asked Barlow Means if he knew J. B. Jennings, a merchant in Lillydale, Tenn., and asked Means if he would go with him to Jennings' store to sell some goods; that he was closing out his business and wanted to sell the remnants. On the following Monday morning Means saw Glenn Russell in Albany, and employed him to drive him to Alpha. The three cartons of shoes were loaded into the car and taken to Albany. Means then asked Russell to drive him to Tennessee. They drove to a point on the Wolfe river, six or eight miles from Lillydale, and Means removed the three cartons of shoes from the car and concealed them in some bushes some distance from the road. He returned to Albany, and that afternoon Perdew came to Albany and about 3 o'clock saw Hall Ewing, a taxi driver, and asked him if he could drive him over the line in Tennessee. Ewing told him he had another trip to make and would take him later. Ewing returned from his trip after dark and with Perdew, Means, and Clifton York started on the trip. They drove to the point on the Wolfe river where Means had concealed the shoes, where Ewing was directed to stop the car. Perdew, Means, and York got out and carried the three boxes to the car. They then drove to Lillydale, arriving there about 9 o'clock. They went to Jennings' home and Means, who knew him, went in and asked him if he would buy some shoes which Perdew wished to sell. Jennings stated that he demurred at first, as he was afraid the shoes had been stolen, but he was assured that they belonged to Perdew. The shoes were carried into Jennings' store and Perdew finally sold them to him for $51. About a month later the shoes were traced and the indictment followed.

Perdew testified that he had no intention to steal the shoes, and that when they were delivered to him by Ragan he placed them on display in his store where they could be seen, and inquired of a number of people as to whether or not they knew of any shoes having been lost. He stated that the cartons had no name or address on them and that the boxes containing the shoes

had stock numbers, but that these afforded no means of determining the owner. Edward J. Brenner, shipping clerk of the Peters Shoe Company of St. Louis, identified the shoes as the ones sold to Higginbotham and shipped to him. The boxes, in addition to stock numbers, had on them a serial number which corresponded to the number on the original order of R. L. Higginbotham. He testified that the shoes were shipped in three cartons by parcel post, addressed to R. L. Higginbotham, Albany, Ky. Perdew stated that he did not notice the serial numbers and did not know they were on the boxes, and there is no evidence that he knew the ownership of the shoes could be traced or established by means of these numbers. Joe Ragan, Claude Owens, and Tom Marcum testified that they saw the shoes from time to time in Perdew's store; that they were conspicuously displayed, and also that they heard Perdew ask different persons if they knew of any one who had lost a shipment of shoes.

Porter Barnes had a contract to carry the mail between Burnside and Albany, and on the day the shoes were lost he carried the first-class mail in a touring car and was followed by a truck in which the three cartons of shoes and other heavy packages were carried. It appears that the charge against him was abandoned. On the trial of the remaining three defendants, Clifton York was acquitted and Perdew and Means were convicted and each sentenced to a term of three years in the penitentiary. Appellants insist that the trial court erred in overruling their motion for a peremptory instruction, since the commonwealth failed to show a felonious intent to take and convert the lost goods at the time they were found.

In order to make the finder of lost property guilty of larceny, a felonious intent on his part to appropriate it is essential, and the intent must exist at the time he first takes the goods into his possession. Commonwealth v. Metcalfe, 184 Ky. 540, 212 S. W. 434; Roberson's Criminal Law & Procedure, sec. 831. To render the finder of lost property guilty of larceny, he must appropriate it to his own use at the time of finding, and he must know at that time who the owner is or have reasonable means of ascertaining that fact; and, if he forms the intent to appropriate the property to his own use thereafter, he is not guilty of larceny, though

he may have learned the identity of the owner in the meantime. Striger v. Darnell, 8 Ky. Law Rep. 57; Atkinson v. Birmingham, 44 R. I. 123, 116 A. 205, 36 A. L. R. 366; Commonwealth v. Titus, 116 Mass. 42, 17 Am. Rep. 138; Hunt v. Commonwealth, 54 Va. (13 Grat.) 757, 70 Am. Dec. 443; Allen v. State, 91 Ala. 19, 8 So. 665, 24 Am. St. Rep. 856; People v. Csontos, 275 Ill. 402, 114, N. E. 123; Brewer v. State, 93 Ark. 479, 125 S. W. 127, 30 L. R. A. (N. S.) 339, 20 Ann. Cas. 1378.

Ordinarily the question of felonious intent is one for the jury to be determined from the evidence, but in the instant case there was no evidence that appellants knew who was the owner of the property, or that there were any marks thereon or other circumstances by means of which the identity of the owner could be learned. While their conduct a month later indicated an effort on their part to conceal the disposition of the goods and constitutes evidence from which a subsequently formed intent to appropriate the property to their own use might be inferred, this is not sufficient to contitute larceny under the general rule above referred to. The appellants may have been guilty of some other crime, but not of larceny. We think that the evidence was insufficient to authorize a submission of the case to the jury, and that the court erred in overruling the appellants' motion for a directed verdict.

Judgment is reversed. Whole court sitting.