# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-3331

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Northern District of Iowa. |
| Dantae Bates, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: May 15, 2009
Filed: October 20, 2009

_____

Before RILEY, SMITH, and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Dantae Bates pled guilty to unlawful possession of a firearm and ammunition as an unlawful user of controlled substances. The district court[1] sentenced Bates to 86 months' imprisonment. On appeal, Bates argues that the district court incorrectly calculated the advisory guideline range by imposing a two-level increase under USSG § 2K2.1(b)(4)(A) for possession of a stolen firearm. He also contends that the district court imposed a substantively unreasonable sentence. We affirm.

---

[1]The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa.

I.

In April 2007, Bates fired three shots into the air outside of Legends Bar in downtown Cedar Rapids, Iowa, to frighten people who were fighting with his friends. Bates drove away and was stopped by officers a short distance from the bar. A search of his vehicle uncovered a loaded pistol with thirteen rounds of ammunition. When questioned about the firearm, Bates denied knowing anything about it or ever firing a gun. After police informed him that a gunshot residue test conducted on his hands was positive, Bates admitted to shooting various firearms in the past week around Cedar Rapids and elsewhere. Bates also stated that he had smoked marijuana a few hours before, and that he was a daily user of marijuana.

Ballistics tests revealed that shell casings found outside of Legends Bar matched the pistol recovered from Bates. A firearms trace of the pistol's serial number revealed that it was purchased by David Ellis in 1998. Timothy Hunt, a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives, interviewed Ellis in August 2007. Ellis stated that the firearm belonged to him, that it was no longer in his possession, and that he had forgotten it in the restroom of the Starlight Lounge in Cedar Rapids in 2007. Ellis could not recall exactly when he lost the gun, but stated that he called the Starlight Lounge a couple of days after realizing that it was missing, and no one had located it. He did not report the gun stolen to the police.

In November 2007, a grand jury returned an indictment charging Bates with knowing possession of a firearm and ammunition as an unlawful user of marijuana, in violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(2). In April 2008, Bates appeared before a magistrate judge and entered a plea of guilty pursuant to a plea agreement. The district court later accepted the plea on the recommendation of the magistrate judge.

The presentence report recommended an advisory guideline range of 57 to 71 months' imprisonment, corresponding to a total offense level of 23 and criminal history category III. The total offense level was derived from a base offense level of 20, USSG § 2K2.1(a)(4)(B), a two-level increase because the firearm was stolen, *id.* § 2K2.1(b)(4)(A), a four-level increase for possessing the firearm or ammunition in connection with another felony offense, *id.* § 2K2.1(b)(6), and a three-level decrease for acceptance of responsibility. *Id.* § 3E1.1(b). Bates objected to the two-level increase under § 2K2.1(b)(4)(A), denying that he stole the firearm from Ellis, and arguing that it was unclear whether the firearm was actually stolen or simply lost by Ellis.

At the sentencing hearing in September 2008, Ellis testified about how he misplaced the firearm. He stated that he used to carry the gun as part of his job as a security guard, and that in mid-March 2007, he accidentally left it in the restroom of the Starlight Lounge. He noted that he suffered from muscular dystrophy and walked into the restroom because he was feeling sick. He unhooked a holster from his belt, placed the holster – which contained the gun – on the restroom counter, and put his coat over it. According to Ellis, he was "in a hurry to get back out, and . . . just probably left it there out of stupidity." The next day, he called the Starlight Lounge, but nobody had turned it in. Ellis testified that he did not sell the gun or authorize anyone to take it, and that he did not know who had taken it.

On cross-examination, Ellis asserted that although he believed he left the gun in the Starlight Lounge, he was not sure, and he was just assuming that he had done so. He also testified that he did not report the gun stolen, and that there was a possibility that his girlfriend had taken the gun, but that she denied doing so. Special Agent Hunt also testified at the sentencing hearing, noting that Ellis's testimony at the hearing essentially mirrored his statements during the August 2007 interview.

The court then heard argument from counsel regarding application of the two-level increase under § 2K2.1(b)(4)(A). Bates maintained that the government failed to show that the gun was stolen, because no one knew what really happened to it. He argued that Ellis's girlfriend could have taken it, that Ellis was not credible, and that it was just as likely that the gun was not stolen. The government countered that regardless of what happened, the gun was stolen, because whoever took it did so without Ellis's authorization.

The court then made the following findings.

> The Court does find Mr. Ellis to be a believable witness. Mr. Ellis is obviously suffering from muscular dystrophy. At the time that the firearm was stolen, he was afflicted with this disease. He was in a bar. He was ill. He testified as to how it was that it came off his holster . . . – he took the holster off the belt, put it on the counter, and put his coat over it while he was in the restroom using the restroom, and well could have left it there. But in any event, I agree with the [government's] analysis here. There is – regardless of who stole [the gun] or when it was stolen, it ended up in the hands of Mr. Bates and became involved in this offense. Mr. Bates did not receive it as a gift from Mr. Ellis. Mr. Ellis didn't sell it. There's absolutely no evidence whatsoever to contradict what Mr. Ellis testified to, and I believe him.

Accordingly, the court concluded that the firearm was stolen within the meaning of § 2K2.1(b)(4)(A). The court denied Bates a downward adjustment for acceptance of responsibility under § 3E1.1(a) and (b), reasoning that his challenge to the stolen-firearm increase had been "totally frivolous" and a "complete waste of time."

After calculating an advisory guideline range of 78 to 97 months' imprisonment, and considering the sentencing factors set forth in 18 U.S.C. § 3553(a), the court sentenced Bates to 86 months' imprisonment. He appeals.

II.

Bates first argues that the district court erred by applying the specific offense characteristic for a stolen firearm under § 2K2.1(b)(4)(A). He contends that the evidence does not support a conclusion that the firearm was stolen. We review the district court's interpretation and application of the guidelines *de novo* and its factual findings for clear error. *United States v. Pate*, 518 F.3d 972, 975 (8th Cir. 2008).

Section 2K2.1(b)(4)(A) provides: "If any firearm . . . was stolen, increase by two levels." The guideline commentary instructs that § 2K2.1(b)(4) "applies regardless of whether the defendant knew or had reason to believe that the firearm was stolen," USSG § 2K2.1(b)(4), comment. (n.8(B)); *see United States v. Martinez*, 339 F.3d 759, 762 (8th Cir. 2003), but the sentencing guidelines do not define the term "stolen." Because there is no indication in § 2K2.1(b)(4) that the Sentencing Commission intended to incorporate state law, we look to federal law to discern the meaning. *See United States v. Turley*, 352 U.S. 408, 411 (1957); *United States v. Jackson*, 401 F.3d 747, 749 (6th Cir. 2005).

In *Turley*, the Supreme Court considered the meaning of the term "stolen" as used in the National Motor Vehicle Theft Act. 18 U.S.C. § 2312. The Court explained that "steal" (or "stolen") "has no accepted common law meaning," and thus must be analyzed in the context in which it appears. *Turley*, 352 U.S. at 411, 413. After reviewing the legislative history of the Act, the Court observed that Congress sought to "eliminat[e] the interstate traffic in unlawfully obtained motor vehicles" and to target "innumerable forms of [vehicle] theft." *Id.* at 416-417. Thus, the Court held, the Act required an interpretation of "stolen" that was not limited "to situations which at common law would be considered larceny," but rather encompassed "all felonious takings of motor vehicles with intent to deprive the owner of the rights and benefits of ownership." *Id.* at 417.

-5-

Considering the context of § 2K2.1(b)(4), we conclude that it likewise requires a broad interpretation of "stolen." The Commission promulgated the adjustment for stolen firearms "on the premise that 'stolen firearms are used disproportionately in the commission of crimes,'" *United States v. Mobley*, 956 F.2d 450, 454 (3d Cir. 1992) (quoting USSG § 2K2.1, comment. (backg'd.) (1991)), and § 2K2.1(b)(4) advances Congress's overall objective to regulate the trade in stolen and altered firearms. As the Third Circuit observed in *Mobley*, discussing an earlier version of § 2K2.1(b)(4):

> [T]he trade in guns is monitored for a reason. Registration and verification procedures are imposed largely to combat crime. It is no secret that a chain of custody for a firearm greatly assists in the difficult process of solving crimes. When a firearm is stolen, determining this chain is difficult . . . . Therefore, stolen . . . firearms in the hands of people recognized as irresponsible pose great dangers, and the guideline here reflects this heightened danger.

956 F.2d at 454. A broad definition of "stolen" is consistent with the guideline's purpose to punish and deter the trade in stolen and altered firearms. Thus, we conclude that "stolen" as used in § 2K2.1(b)(4) includes all felonious or wrongful takings with the intent to deprive the owner of the rights and benefits of ownership, regardless of whether or not the theft constitutes common-law larceny. *Accord Jackson*, 401 F.3d at 749-50; *United States v. Walters*, 269 F.3d 1207, 1218 (10th Cir. 2001).

Bates does not take issue with this definition, but asserts that the district court clearly erred in finding that the gun was stolen, because no one knows exactly when, where, or under what circumstances the gun went missing. He argues that Ellis may have left it in the bathroom of the Starlight Lounge, or that his girlfriend may have taken it, and emphasizes that Bates never admitted to knowledge that the gun was stolen.

We conclude that the evidence adequately supports the district court's finding that the firearm was stolen. Ellis testified that he believed he accidentally left the gun in the restroom of the Starlight Lounge in March 2007. Specifically, he stated that he removed his holster from his belt and placed the holster, which contained the gun, on the restroom counter under his coat. He further testified that he never authorized anyone to take the gun, never sold it, and never gave it away as a gift. Ellis stated that his girlfriend denied taking the gun, and the district court found Ellis to be credible.

There is substantial evidence that whoever came into possession of Ellis's gun, whether in the bathroom of the Starlight Lounge or elsewhere, took the gun with the intent to deprive the owner of the rights and benefits of ownership, thereby stealing the gun within the meaning of § 2K2.1(b)(4). Contrary to the childhood adage "finders keepers, losers weepers," retention of lost or mislaid property can be a wrongful taking when there are readily available means to ascertain and locate the rightful owner. A person commits theft in a number of jurisdictions if he comes into control of property of another that he knows to have been lost or mislaid, and, with the purpose of depriving the owner of the property, fails to take reasonable measures to restore the property to the owner. *See, e.g.*, *State v. Beyer*, 619 N.W.2d 213, 217 (Neb. 2000); *State v. Campbell*, 536 P.2d 105, 110 (Alaska 1975); *Lawson v. Indiana*, 276 N.E.2d 514, 515 (1971); *Perdew v. Commonwealth*, 86 S.W.2d 534, 535-36 (Ky. 1935); *State v. Evans*, 807 P.2d 62, 64 (Idaho Ct. App. 1991); *see generally* Model Penal Code § 223.5.

Here, Ellis's pistol contained an unaltered, traceable serial number, which the agents used to determine that Ellis had purchased the firearm. Finding a firearm in a restroom is not like stumbling upon a shiny quarter on a busy sidewalk in New York City. There existed a readily available means of ascertaining the owner of the gun. The evidence supports a finding that whoever gained possession of the gun knew that it was lost or mislaid, and took no steps to return it, because the gun was not conveyed to law enforcement, deposited with the Starlight Lounge, or returned to Ellis. There

was an adequate basis for the court to conclude that whoever came into possession of Ellis's gun stole it within the meaning of § 2K2.1(b)(4).

## III.

Bates next contends that his 86-month sentence is substantively unreasonable under 18 U.S.C. § 3553(a). He argues that the sentencing court failed to abide by the requirement that a sentence be "sufficient, but not greater than necessary" to comply with the purposes of § 3553(a)(2). He observes that this was his first felony conviction, he has no prior convictions for crimes of violence or weapons offenses, his longest term of imprisonment was five days, and he has a substance abuse problem.

We review the substantive reasonableness of a sentence under a "deferential abuse-of-discretion standard." *Gall v. United States*, 552 U.S. 38 (2007); *United States v. Feemster*, 572 F.3d 455, 464 (8th Cir. 2009) (en banc). Where, as here, the sentence imposed is within the advisory guideline range, we accord it a presumption of reasonableness. *See Rita v. United States*, 551 U.S. 338, 347 (2007); *United States v. Lincoln*, 413 F.3d 716, 717 (8th Cir. 2005).

In considering the factors set forth in § 3553(a), the district court noted that "unlike the typical felon in possession case, [Bates] actually fired the illegally possessed firearm in the city limits, in a location where many people were gathered in an extremely hazardous situation, allegedly because people were fighting." Such conduct, the court observed, is "very, very risky" and "totally inappropriate." Nothing in the record persuades us that the district court impermissibly selected a sentence within the advisory guideline range. The dangerous nature of Bates's offense conduct provides ample justification for the district court's exercise of its considerable discretion.

For these reasons, the judgment of the district court is affirmed.

_____