**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 7, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

        Plaintiff-Appellee,

v.

KIM LYLE COX,

        Defendant-Appellant.

No. 11-4087
(D.C. No. 2:10-CR-00273-DB-1)
(D. of Utah)

---

**ORDER AND JUDGMENT**[*]

---

Before **LUCERO**, **HOLLOWAY**, and **TYMKOVICH**, Circuit Judges.

---

Kim Lyle Cox was sentenced to 71 months' imprisonment and 36 months' supervised release after pleading guilty to firearms charges. On appeal, Cox claims the sentencing court clearly erred in enhancing his sentence after finding he possessed a stolen gun. We conclude the government introduced sufficient evidence for the court to infer Cox's gun was stolen and AFFIRM the district court's sentence.

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

# I. Background

Cox was arrested in Utah on January 12, 2010 on charges arising from a state offense. While in custody, Cox called his girlfriend and directed her to dispose of a gun hidden in his car. After retrieving the gun, the girlfriend took it to her parents, asking them to discard it. Her parents kept the gun.

A month later, the Utah County Sheriff's Office received an anonymous tip that a gun at the girlfriend's parents' residence might have been involved in homicides and that Cox might have information about the homicides. Also, Cox was released the same day. A week later, police acted on the tip and went to the parents' home. They confiscated a 9mm Glock handgun with the serial number DDX629US. One of the three serial numbers on the gun was scratched out.

Police later arrested Cox and charged him with possession of a firearm by a felon. Cox pleaded guilty to this charge.

Cox's presentence report (PSR) recommended a four-level increase in his offense level pursuant to United States Sentencing Guideline (USSG) § 2K2.1(b)(4)(B) because the Glock had an obliterated serial number. Cox objected to this increase on the grounds that only one of the gun's three serial numbers was scratched off. The sentencing court agreed this increase was not warranted. The court nonetheless found the government's evidence sufficient to establish that Cox's gun was stolen. The court then increased Cox's offense level

by two under USSG § 2K2.1(b)(4)(A).  The court sentenced Cox to 71 months' imprisonment and 36 months' supervised release.

## II.  Discussion

We review the district court's factual findings, including findings related to application of the sentencing guidelines, for clear error.  *United States v. Graham*, 413 F.3d 1211, 1218 (10th Cir. 2005).  We will not disturb the district court's findings of fact unless they have no support in the record.  *United States v. Mozee*, 405 F.3d 1082, 1088 (10th Cir. 2005) (internal citation omitted).  When reviewing the district court's findings, we should view the evidence and any "inferences therefrom in the light most favorable to the district court's determination."  *Id*. (internal quotation omitted).  At sentencing, the court is entitled to make findings based on a preponderance of the evidence.  *United States v. Magallanez*, 408 F.3d 672, 684 (10th Cir. 2005).

In a case like this the court must draw inferences from circumstantial evidence.  But the inferences must be reasonable, meaning they must flow from the facts in evidence based on logical or probabilistic reasoning.  *United States v. Summers*, 414 F.3d 1287, 1295 (10th Cir. 2005).  An inference is permissible so long as it is reasonable, even if the inference is not required by the evidence and is not the one that the reviewing court, if it were the trier of fact, would make.  *See United States v. Phillips*, 543 F.3d 1197, 1210 (10th Cir. 2008).  Inferences

-3-

are unreasonable when they require "a degree of speculation and conjecture that renders [them] a guess or mere possibility." *United States v. Bowen*, 527 F.3d 1065, 1076 (10th Cir. 2008) (internal quotation omitted).

Cox contends the court erred in reviewing the evidence. He claims no reasonable jurist could conclude from the evidence presented that his gun was stolen; the gun's status was merely a possibility or guess. We disagree.

At Cox's sentencing, the government introduced several pieces of evidence and testimony to prove his gun was stolen: (1) a bill of sale showing the 9mm Glock handgun with the serial number DDX629US that ended up in Cox's possession was purchased by Dennis White in 1999; (2) a police report showing a gun matching this description was stolen from the home of Dennis's son Greg in 2006, although it did not provide the gun's serial number; and (3) a police report stating that police detectives in Laramie, Wyoming, had learned that Cox had a gun that was stolen from Greg White and that the White burglary happened at a time when Cox was White's neighbor.[1] The government claims this evidence, taken as a whole, shows that Dennis White's 9mm Glock handgun was stolen from his son, Greg, in 2006, and made its way to Cox, who then possessed it until his girlfriend gave it to her parents.

---

[1] The report is hearsay, but hearsay is admissible at sentencing so long as it has some indicia of reliability. *United States v. Cook*, 550 F.3d 1292, 1296 (10th Cir. 2008).

Cox told his arresting officers a different story of the gun's provenance. He claimed to have purchased the gun approximately 7 years before his arrest. He claims he bought it from a stranger in a Salt Lake City gas station parking lot for $100. Cox admits that at the time of the purchase, when he asked the seller whether the gun was "hot," the seller replied, "Probably." R., Vol. III at 6. Cox's account conflicts with the government's evidence in that, if believed, it shows he obtained the gun before Greg White was burglarized, so the gun could not have come from the Whites.

Before the district court and on appeal, Cox argues this evidence does not establish his gun was stolen because it does not eliminate the possibility that Greg White had another 9mm Glock pistol stolen from him, as opposed to the 9mm Glock owned by his father and then Cox. Cox may be correct that the government's evidence does not *require* the inference that his gun was stolen from the Whites, but the evidence nonetheless permits this inference.

First, Cox is simply incorrect that none of the government's evidence goes to whether his gun was stolen. The government may not have introduced any direct evidence of this fact, but it introduced several pieces of circumstantial evidence tending to show this. This includes the evidence discussed above, as well as Cox's attorney's admission at sentencing that Dennis White transferred his Glock to his son, Greg. Cox denies his attorney made such an admission, claiming he merely declined to dispute the contents of Cox's PSR, but the

transcript of the sentencing hearing shows that he did.[2]  The sentencing court was

_____

[2]  The dissent argues that, read in context, it is clear Cox's counsel did not concede that Dennis White transferred the Glock to his son, Greg.  The relevant exchange was as follows:

> The Court: Right, but we have this information that I can look at, and it appears to be authentic, that Dennis White purchased a Glock nine millimeter with the serial number D.D.X. 629 –
>
> Mr. Douglas [Defense Counsel]: I do not dispute that he owned the Glock here.
>
> The Court: I take it you don't dispute that – maybe I shouldn't – do you dispute the information that the father transferred the gun to the son?
>
> Mr. Douglas: I take it from the report and I would not dispute that.
>
> The Court: Then the son reported stolen a 9mm Glock.
>
> Mr. Douglas: That is right, but we don't know whether that is the Glock that he borrowed from his father.  We do not know if his father owned more than –
>
> The Court: Do you have any information that he did own more than one Glock?

R., Vol. II at 28–29.  This reveals that the court was discussing Cox's gun, the DDX629US Glock, and then asked counsel whether he disputed that the father (Dennis) transferred "the" gun to his son (Greg).  In the context of the discussion, "the gun" clearly refers to Cox's Glock, serial number DDX629US.

Counsel then argued the gun stolen from Greg might not have been the Glock he borrowed from Dennis, or that Dennis might have had more than one Glock.  But counsel never finished this second argument, as he was interrupted by the court.  The dissent assumes counsel was planning to argue that Dennis may have transferred a different Glock to Greg.  But this is not in the transcript, unlike counsel's clear concession that Dennis transferred "the gun" to Greg.  It is equally likely that counsel planned to argue that Dennis transferred multiple

(continued...)

entitled to rely on this representation. *See United States v. Ventura-Perez*, 666

F.3d 670, 676 (10th Cir. 2012) ("Courts could not function properly if

concessions by counsel cannot be relied upon.").

This evidence together created a reasonable probability that the 9mm Glock

Greg White reported as stolen was the same 9mm Glock that belonged to Dennis

White. *Phillips*, 543 F.3d at 1210. Cox claims an inference is permissible only if

strictly logical, pointing out that correlation is not causation and citing *United

States v. Jones*, 49 F.3d 628, 632 (10th Cir. 1995). He says the inferences here

rely on the logical fallacy of *post hoc ergo propter hoc*, in which a temporal

connection between events—in this case, his possession of the Glock after Greg

White's robbery—is erroneously assumed to be a causal connection. He asserts

this moves the inference into the realm of speculation, making it unreasonable.

Cox may be correct that the government's evidence does not *require* us to

deduce his gun was stolen, but the reasonableness of a permissive inference is not

based solely on deductive reasoning. As we stated in *Summers*, an inference is

_____

[2](...continued)
identical Glocks to Greg, including the DDX629US Glock.

In any event, Cox's primary argument below and on appeal is that the
government did not prove the Glock stolen from Greg White was the DDX629US
Glock, as opposed to a hypothetical identical Glock. Whether this hypothetical
second Glock came from Dennis or Greg does not change the analysis, given
counsel's admission that Dennis transferred the DDX629US Glock to Greg.

also permissible if the evidence establishes a reasonable probability it is true. 414 F.3d at 1295; *see also Phillips*, 543 F.3d at 1210.[3]

The chain of logic establishing that Cox's gun was stolen is as follows: Dennis White bought the Glock, Dennis White gave the Glock to Greg White, someone stole a gun matching the Glock's description from Greg White, and Cox was later found in possession of the Glock. The only missing link is conclusive proof that the stolen gun was this same Glock, and not, as Cox argues, an identical gun Greg White possessed in addition to his father's gun. The evidence tends to make the former explanation more likely than the latter.

While the dissent is correct that the government did not prove Greg White possessed only one 9mm Glock, the burglary evidence does not exist in a vacuum. The government's evidence also showed that Greg's father, Dennis, purchased the Glock, and that Cox was later found in possession of it. When asked to explain how he got the gun, Cox gave an unconvincing account that frankly supports the inference that the gun was stolen.

We have held that unexplained possession of stolen property supports the inference that the possessor knew the property was stolen and actually stole the property himself. *See United States v. Luman*, 624 F.2d 152, 155 (10th Cir.

---

[3] Probabilistic reasoning is a form of inductive reasoning, whereby conclusions are reached by generalizing from specific facts. *See* John Vickers, "The Problem of Induction," *The Stanford Encyclopedia of Philosophy* (Edward N. Zalta, ed., 2011), http://plato.stanford.edu/entries/induction-problem/.

1980). This does not exactly describe the situation here, but it is similar enough to support a similar inference. Cox explained his possession of a gun that the evidence suggested was stolen by stating he bought it from a stranger in a gas station parking lot who told him it was probably stolen.[4] Taken in conjunction with the other evidence, this makes it more likely than not that the gun was stolen, regardless of whether Greg White had a hypothetical second Glock.

The Eighth Circuit's decision in *United States v. Bates* supports this analysis. 584 F.3d 1105 (8th Cir. 2009). In *Bates*, the Eighth Circuit affirmed the district court's finding at sentencing that the defendant's gun was stolen based on the former owner's testimony that he probably left the gun at a bar. *Id*. at 1107–08. He also admitted his girlfriend might have taken the gun, though she denied this. *Id*. The former owner never reported the gun stolen, and there was no evidence as to who took the gun or how, but the court held that the evidence was sufficient to support the inference that whoever took the gun did not have the owner's permission and intended to deprive him of ownership. *Id*.

The evidence here is stronger: a gun matching the description of Cox's weapon was reported stolen from the former owner's son who, as Cox's attorney

---

[4] Cox's account obviously differs somewhat from the government's theory, primarily because he claimed he purchased the gun roughly three years before Greg White was robbed. But viewing this evidence in the light most favorable to the district court's determination, Cox's frankly implausible claim that he bought the gun "approximately" seven years prior to his arrest is vague and does not necessarily drive a conclusion he obtained the gun before Greg White was robbed.

admitted, received the gun from his father. This certainly permits the inference that the stolen gun was the same gun once owned by Dennis White and later found in Cox's possession, even though the evidence does not require this inference. Given that this inference is permissible, we are bound to draw it in the district court's favor. *Mozee*, 405 F.3d at 1088.

Because the underlying circumstantial evidence and reasonable inferences drawn therefrom support the district court's finding under a preponderance of the evidence standard, the district court did not clearly err when it concluded Cox's gun was stolen. Given this, the district court also did not err when it increased Cox's offense level by two under USSG § 2K2.1(b)(4)(A).

## IV. Conclusion

For the foregoing reasons, we AFFIRM the sentence imposed by the district court.

Entered for the Court,

Timothy M. Tymkovich
Circuit Judge

*United States v. Cox*, No. 11-4087

**HOLLOWAY**, Circuit Judge, dissenting:

I respectfully dissent. It is well settled that the government has the burden of proof with respect to sentence enhancements. *See, e.g., United States v. Munoz-Tello*, 531 F.3d 1174, 1181 n.12 (10th Cir. 2008). Consequently, mere assumptions without adequate support in the record are insufficient. *Id.* at 1182-83. I cannot agree that the government carried its burden of proof with respect to the sentencing enhancement at issue here.

The government's case on the critical issue of the "stolen" gun rested entirely on the three exhibits which were admitted without objection – Exhibits 2, 3 and 4. Exhibit 3 shows that the offense gun had been purchased in 1999 by Dennis White; the exhibit includes the serial number of the offense gun. Exhibit 4 shows that in 2006, a Glock pistol, serial number unknown, had been stolen from a garage in Lehi, Utah belonging to Greg White (the son of Dennis White). With these facts established, the government still needed to provide the last link in the logical chain: some evidence that the gun stolen from Greg White's garage was the same gun that Dennis White had purchased in 1999.

Such evidence was needed, in my view, because Exhibits 3 and 4 were insufficient to support a reasonable inference that the stolen gun was the offense gun. To reach the desired conclusion based on the fact that Dennis White had purchased the offense gun in 1999, and a similar gun had been stolen from Greg White in 2006, would require speculation, not reasoned, probabilistic analysis.

Therefore, it seems to me that the issue turns on whether Exhibit 2 provided the critical, missing linkage.

In my view, Exhibit 2 provides nothing at all. This one-page exhibit is an excerpt from an incident report, possibly from the Defendant's arrest on the current charge. The author of the report is not identified. The report includes this:

> Wyoming detectives provided me a report which explains how they learned this firearm in question [] was sold by Sportsman's Warehouse to Dennis White, and then stolen from Dennis's son Greg White, who resided at 377 W 200 S in Lehi, UT., at the time of the theft, see attached report.
> I spoke with Lt. Jeff Magnusson with Lehi Police, who told me the firearm in question was reported stolen by Greg White as stated, . . . see attached for further details.

Otherwise, Exhibit 2 reports that at the time of the theft Mr. Cox lived in Lehi "in close proximity" to the location of the theft. It is particularly noteworthy that there is no attachment to this exhibit, nor was any explanation given for the absence of the attachment referenced twice in the exhibit.

The majority correctly notes that hearsay is admissible in sentencing hearings subject to the requirement that the evidence must have some indicia of reliability. Exhibit 2, on which the government's case must turn, has *no* indicia of reliability as to the information relayed from Wyoming authorities to the unidentified author. It is undisputed that Greg White did not report the serial number of the gun that had been stolen from his garage. How did the Wyoming

-2-

authorities determine that the stolen gun was the same weapon as the offense gun? What was the source of the information? Did the Wyoming authorities *learn* this, or did they merely surmise that it might be the case? Did the Wyoming authorities interview either Dennis White or Greg White? We are given no such essential information. Apparently the majority agrees that this information is untrustworthy, because if it were accepted, it would resolve the issue without need for any further analysis.

The majority opines that defense counsel conceded at the sentencing hearing that Dennis White transferred *his* Glock to his son, Greg. (Thus assuming that Dennis White owned only one Glock, an assumption which finds no support in the evidence.) Maj. op. at 5-6 & n.2. But I would hold that defense counsel conceded only that Dennis White had transferred *a* gun to his son. While I certainly agree with the majority that courts are entitled to rely on concessions by counsel, that principle surely demands that we be clear about what it is that counsel has conceded. The majority offers one statement made by counsel at the sentencing hearing with no context. Because of the uncertainties inherent in oral remarks made in the crucible of an adversary hearing, it is only fair to look at the context to be certain that we have interpreted this single remark correctly.

That context, to me, makes it an impermissible leap of faith to say that counsel was conceding that the stolen gun was the same gun that Dennis White had transferred to his son, Greg. The majority's interpretation of counsel's

-3-

concession is fundamentally inconsistent with the position taken by counsel at the hearing, as shown by the exchanges that followed directly after the truncated quote on which the majority relies. The majority quotes one question from the district judge and a one-sentence response by defense counsel:

> The Court: I take it you don't dispute that – maybe I shouldn't – do you dispute the information that the father transferred the gun to the son?
>
> Mr. Douglas [Defense Counsel]: I take it from the report and I would not dispute that.

The dialogue continued:

> The Court: Then the son reported stolen a nine millimeter Glock.
>
> Mr. Douglas: That is right, but we don't know whether that is the Glock that he borrowed from his father. We do not know if his father owned more than –

At that point, the judge interrupted counsel and asked if he had any evidence that "he" (apparently referring to the father, Dennis White) owned more than one Glock. Counsel responded, correctly, that the burden of proof was on the government, not his client, and contended that the government "cannot meet its burden without an improper assumption based on no evidence."

Just moments later (apparently, it being four pages later in the transcript), counsel again argued that the government had failed to offer evidence to support its contention that the gun stolen from Greg White in 2006 was the offense gun purchased by Dennis White in 1999. Counsel stated that the only government

witness at the hearing had offered no testimony "that he asked Dennis or Greg . . . whether they owned more Glocks or more firearms."[5]

Because I would read counsel's statements in context, I would not find that counsel had conceded that Dennis White had transferred the offense gun to Greg White. But even if the majority's reading were correct, the government still produced no evidence that the stolen gun was the offense gun. As Mr. Cox's counsel pointed out, the government produced no evidence to support the conclusion, other than the third-hand speculation contained in Exhibit 2. There is no evidence that the stolen gun was the only gun, or the only Glock pistol, owned by Greg White.

The conclusion that the pistol stolen from Greg White in 2006 was the offense gun cannot be the result of probabilistic reasoning, as the majority claims. If Greg White owned two Glocks, probabilistic reasoning would suggest a fifty percent possibility that the stolen gun was the offense gun. Such an assumption is insufficient to establish that the contention was more likely true than not true. And if Greg White owned more than two Glocks, quite clearly the contention that the stolen gun was the offense gun would be less likely to be true.

---

[5]The judge told counsel that he could ask the agent that question. Counsel did so, but the agent stated that because he had not been the agent assigned to the investigation, he had no contact with either of the Whites.

Defense counsel was indisputably correct when he argued to the district court that the burden of proof was on the government. Mr. Cox had no obligation to produce evidence that Greg White indeed owned more than one Glock. The government asked the district court to adopt a finding which lacked support in the evidence. In making that finding, the district court erred.

In *United States v. Munoz-Tello*, 531 F.3d 1174 (10th Cir. 2008), the defendant had been convicted of transporting undocumented aliens after a tragic accident in which four of the defendant's passengers had been killed. The government pressed for a sentencing enhancement based on the premise that the defendant had recklessly created a substantial risk of bodily injury. The district court agreed that the enhancement applied, basing his conclusion on, *inter alia*, a finding that by overloading the vehicle, the defendant had adversely affected its handling or maneuverability. *Id*. at 1182-83.

It may have been true in *Munoz-Tello* that overloading the vehicle had adversely affected its handling or maneuverability, but there was no evidence to support such a finding, so we reversed. Similarly, here it *may* be the case that the stolen gun was the offense gun, but the evidence is insufficient to prove it.

The majority's attempt to find support for its holding in a statement made by Mr. Cox to investigators is unpersuasive to me because it rests on a credibility finding made by the majority, a function which of course is reserved for the trial court. As reflected in the PSR, Mr. Cox told an investigator that he had

purchased the offense weapon for $100 in a transaction which occurred in the parking lot of a service station. The district judge did not rely in any way on this evidence; indeed, the judge did not even comment on this evidence. Nor did the government make any argument to the district court regarding Mr. Cox's account of how he had acquired the offense gun.

Because Mr. Cox's explanation of his purchase was neither the basis for any argument by the government in the district court nor the subject of any finding by the district court, the majority's reliance on this evidence is troublesome. Even more troubling is the majority's characterization of Mr. Cox's account as "frankly implausible." While I disagree with that characterization, the more salient point for this court is that fact-finding, including of course the decision whether to credit any specific evidence, is for the district court, not for us.

The majority acknowledges that Mr. Cox's account, if believed, would show that the offense gun had not been acquired from the Whites. Maj. op. at 5.[6] Yet the majority also reasons that Mr. Cox's account, "in conjunction with the other evidence . . . makes it more likely than not that the gun was stolen . . . ." *Id*. at 9. This conclusion is simply illogical if Mr. Cox's account is believed.

_____

[6]Elsewhere in the opinion, however, the majority characterizes Mr. Cox's account as one that merely "differs somewhat from the government's theory." Maj. op. at 9, n.4.

-7-

Thus, it is clear that the majority's reasoning depends on finding that Mr. Cox's account is not credible.

For the reasons stated, I must respectfully dissent. I would reverse and remand for a new sentencing hearing.