# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-2574

_____

United States of America

*Plaintiff - Appellee*

v.

Terrence Terrell Mathews, also known as Terrence Terrell Matthews

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota - St. Paul

_____

Submitted: March 12, 2015
Filed: May 5, 2015

_____

Before WOLLMAN and COLLOTON, Circuit Judges, and WHITE,[1] District
Judge.

_____

WOLLMAN, Circuit Judge.

_____

[1]The Honorable Ronnie L. White, United States District Judge for the Eastern
District of Missouri, sitting by designation.

A jury found Terrence Matthews[2] guilty of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), and the district court[3] sentenced him to 96 months' imprisonment. On appeal, Matthews argues that the district court erred when it denied his motion to suppress evidence obtained during a warrant search of his apartment and when it applied the two-level specific offense characteristic for possession of a stolen firearm under § 2K2.1(b)(4) of the U.S. Sentencing Guidelines Manual (Guidelines). We affirm.

In January 2013, Melanie Hines, Matthews's occasional girlfriend and the mother of his child, called police to report the theft of a firearm. She identified Matthews as a possible suspect in the theft, and she allegedly suggested that Matthews may also have been involved in trafficking heroin. Police learned that Matthews lived with his mother in an apartment located in a large, secure apartment building, to which the owner had granted police all-hours access by placing a key in an outdoor lockbox. Their apartment was one of forty or fifty individual apartments whose doors opened onto a long common hallway. Later in January, police went to the apartment building with a trained police dog to conduct a drug sniff in the common hallway area outside the door to Matthews's apartment. The dog alerted to the presence of drugs. In February 2013, police returned to the apartment building with the same dog and conducted another drug sniff in the common hallway area outside the door to Matthews's apartment. The dog again alerted "while sniffing the lower door seam" of Matthews's apartment but did not alert when police led it to four other apartment doors opening onto the common hallway.

---

[2]Appellant refers to himself as "Matthews," and we adopt that spelling of his name.

[3]The Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota.

On February 25, 2013, a state-court judge issued a warrant to search Matthews's apartment for evidence of drugs and firearms based on a police affidavit describing the stolen-gun report from Hines and the two drug dog alerts outside Matthews's apartment. Police executed the warrant on February 27, 2013, and recovered drug paraphernalia, a digital scale, trace amounts of heroin, and the gun Hines had reported stolen.

A grand jury returned an indictment charging Matthews with a single count of being a felon in possession of a firearm. Matthews filed a motion to suppress the evidence seized during the search of his apartment, arguing that the search warrant was not supported by probable cause. Specifically, Matthews argued that because the drug dog sniffs were unlawful searches under the Fourth Amendment, evidence that the dog twice alerted to the presence of drugs should not have been included in the search-warrant affidavit and should not have been considered in determining whether probable cause existed to issue the warrant. He also argued that the search-warrant affidavit misrepresented the information provided by Hines and omitted critical details about his relationship with Hines and her potential bias.

Adopting the magistrate judge's[4] report and recommendation, the district court denied Matthews's motion to suppress, concluding that under Eighth Circuit precedent, the drug dog sniffs were not unconstitutional because the common area or hallway outside an apartment door does not receive Fourth Amendment protection. And because the positive "results of a narcotics sniff alone may establish sufficient probable cause for a warrant," the lawful drug dog sniffs provided sufficient probable cause to issue the search warrant even without the information attributed to Hines. D. Ct. Order of Oct. 25, 2013, at 7 (citing United States v. Sundby, 186 F.3d 873, 875-76 (8th Cir. 1999) (holding that a drug "dog's positive indication alone is enough to

---

[4]The Honorable Arthur J. Boylan, then Chief Magistrate Judge of the United States District Court for the District of Minnesota, now retired.

establish probable cause for the presence of a controlled substance if the dog is reliable")).

Following Matthews's conviction, the presentence report (PSR) recommended applying a two-level specific-offense adjustment under Guidelines § 2K2.1(b)(4) for possession of a stolen firearm. Matthews objected to the enhancement, arguing that because he did not intend to keep the firearm, it was not "stolen" for purposes of the enhancement. The district court rejected Matthews's argument, applied the § 2K2.1(b)(4) enhancement, and imposed a 96-month term of imprisonment.

Matthews first contends that the district court erred in denying his motion to suppress the evidence seized during the search of his apartment. He argues that the positive alerts from the drug dog sniffs could not be used to establish probable cause because the sniffs were warrantless searches in violation of the Fourth Amendment, as construed by the Supreme Court in Florida v. Jardines, 133 S. Ct. 1409, 1417-18 (2013) (holding that "use of trained police dogs to investigate the home and its immediate surroundings is a 'search' within the meaning of the Fourth Amendment"). Thus, he argues, the warrant was not supported by probable cause, the search pursuant to that warrant was unlawful, and the remedy for this violation is to exclude the evidence seized during the search of his apartment. On appeal from the denial of a motion to suppress, we review the district court's findings of fact for clear error and its legal conclusions *de novo*. See United States v. Hollins, 685 F.3d 703, 705 (8th Cir. 2012).

We addressed a similar argument in United States v. Davis, 760 F.3d 901, 903, 905 (8th Cir. 2014), cert. denied, 135 S. Ct. 996 (2015). In Davis, we assumed without deciding that a warrantless drug dog sniff outside the door to an apartment violated the defendant's Fourth Amendment rights as construed in Jardines, but we held that because the police had reasonably relied on binding circuit precedent sanctioning such drug dog sniffs, the exclusionary rule did not preclude the use of that

-4-

evidence in a search-warrant application, and the defendant's motion to suppress was properly denied. We based our conclusion on the Supreme Court's decision in Davis v. United States, 131 S. Ct. 2419, 2423-24 (2011), which held that "searches conducted in objectively reasonable reliance on binding appellate precedent are not subject to the exclusionary rule."

In subsequent cases, we declined to reach the question whether a drug dog sniff violated the Fourth Amendment as construed in Jardines because each of the drug dog sniffs at issue occurred prior to the Jardines decision and thus was permissible under binding circuit precedent. See United States v. Hunter, 770 F.3d 740, 742-43 (8th Cir. 2014); United States v. Givens, 763 F.3d 987, 991-92 (8th Cir. 2014), cert. denied, 83 U.S.L.W. 3699 (U.S. Mar. 2, 2015) (No. 14-8285). We concluded in those cases that even if Jardines cast doubt on our earlier cases sanctioning the use of a drug dog to sniff around the door of an apartment in the common hallway of an apartment building, application of the exclusionary rule would not be appropriate because it was objectively reasonable at the time for police to rely on binding circuit precedent permitting such drug dog sniffs. See Hunter, 770 F.3d at 742-43; Givens, 763 F.3d at 991-92. We reach the same conclusion here.

When the police conducted the January/February 2013 drug dog sniffs, circuit precedent established that a "sniff of the apartment door frame from a common hallway [does] not constitute a search subject to the Fourth Amendment." United States v. Scott, 610 F.3d 1009, 1016 (8th Cir. 2010), cert. denied, 131 S. Ct. 964 (2011). The police reasonably relied on this precedent, and the positive alerts from those sniffs alone provided probable cause to issue the search warrant for Matthews's apartment. See, e.g., Sundby, 186 F.3d at 875-76. The exclusionary rule did not

apply to preclude use of evidence seized during the search, see Davis, 760 F.3d at 905, and thus the district court did not err in denying Matthews's motion to suppress.[5]

Matthews next asserts that the district court erred in applying the two-level specific offense characteristic for possession of a stolen firearm under § 2K2.1(b)(4) of the Guidelines, arguing that because he intended to return the firearm to Hines, the firearm was not "stolen" for purposes of the enhancement. We review a district court's application of the Guidelines *de novo* and its related factual findings for clear error. See, e.g., United States v. Bates, 584 F.3d 1105, 1108 (8th Cir. 2009).

At trial, Matthews testified that he took the firearm from Hines on December 14, 2012, after an incident during which he and Hines argued, she threatened him with the gun, and the gun accidentally discharged. He further testified that he did not return the gun to Hines immediately for fear that she would use it against him again; that he gave the gun to his mother because he knew that, as a convicted felon, he was not permitted to possess the gun; and that he intended to return the gun to Hines eventually. Thus, he argues, because he intended to return the gun to Hines and did not intend to permanently deprive her of ownership, the § 2K2.1(b)(4) two-level stolen-gun enhancement did not apply.

Section 2K2.1(b)(4) provides for a two-level increase to a defendant's base offense level if he is convicted of being a felon in possession of a "stolen" firearm. We have "conclude[d] that 'stolen' as used in § 2K2.1(b)(4) includes all felonious or wrongful takings with the intent to deprive the owner of the rights and benefits of ownership, regardless of whether or not the theft constitutes common-law larceny." Bates, 584 F.3d at 1109. Thus, although "intent to permanently deprive is an element of common-law larceny," United States v. Tyerman, 701 F.3d 552, 565 (8th Cir.

---

[5]Because the drug dog sniffs alone provided probable cause for the search, we need not address Matthews's argument regarding alleged misrepresentations and omissions in the warrant affidavit.

2012), cert. denied, 133 S. Ct. 1849 (2013), we held in Bates that a theft equivalent to "common-law larceny" is not required for a gun to be considered "stolen" for § 2K2.1(b)(4) purposes, 584 F.3d at 1109.

Here, the undisputed facts establish that the firearm recovered from Matthews's apartment on February 27, 2013, was registered to Hines, that Hines had called police in January 2013 to report the gun stolen, and that Matthews had admitted that the gun was in his possession at some point. The district court rejected Matthews's claims regarding his intent to return the gun, concluding that it would have been "a much tougher issue . . . had the firearm possession not lasted for the length of time that it did." But because Matthews retained the gun for "a couple months" rather than "a couple days," the district court concluded that Matthews did "not intend[] to return [the gun] anytime soon," that he thus "depriv[ed] the registered owner of possession of that gun," and that the § 2K2.1(b)(4) stolen-firearm enhancement applied.

The district court did not err in applying § 2K2.1(b)(4). Even if we accept Matthews's testimony that he intended to return the firearm to Hines, the undisputed facts described above are sufficient to show that Matthews wrongfully took the firearm with the intent to deprive Hines of her ownership rights therein. Despite Matthews's claims that he intended to return the gun, he did not do so. Indeed, after Hines reported the gun stolen in January 2013 and identified Matthews as the potential thief, more than a month passed before police eventually recovered the firearm from Matthews's apartment. In these circumstances, application of the § 2K2.1(b)(4) stolen-gun enhancement was appropriate.

The judgment is affirmed.

_____