# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-2577

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Southern District of Iowa. |
| Angelo Lavell Scott, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: April 12, 2010
Filed: July 6, 2010

_____

Before BYE, BEAM and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

From the summer of 2006 until April 2007, Angelo Scott and two co-conspirators operated a crack cocaine distribution business in Iowa City, Iowa. A jury found Scott guilty of conspiracy to distribute fifty grams or more of cocaine base. Based on Scott's two prior felony drug convictions, the district court[1] sentenced him to the mandatory sentence of life in prison without the possibility of parole. On

_____

[1] The Honorable John A. Jarvey, United States District Judge for the Southern District of Iowa.

appeal, Scott raises a series of challenges to his conviction and sentence. For the following reasons, we affirm.

## I.    BACKGROUND

In the summer of 2006, Scott and two others, Andrell Sanders and Christopher McGee, agreed to move from Chicago to Iowa City for the purpose of distributing crack cocaine. The three regularly pooled their money and traveled from Iowa City back to Chicago to buy crack cocaine, usually buying 63 grams (about 2.25 ounces) per trip. Upon returning to Iowa City, where crack cocaine prices were higher, they divided the crack cocaine and distributed it to others.

A confidential informant told Iowa City police that Scott was distributing crack cocaine out of an apartment in Building 44 of the Lakeside Apartments. As a result of this tip, Officer Kevin Berg of the Iowa City Police Department brought his drug detection dog, Naton, into the common hallway of Building 44. Naton first sniffed a utility closet door and did not alert. Officer Berg then brought Naton to the front door of the apartment from which Scott allegedly was distributing crack cocaine. After sniffing the door frame, Naton alerted to the odor of narcotics. Officer Berg then brought Naton to examine the door of another utility closet. Naton again did not alert.

After Naton's alert at the apartment door, Detective Paul Batcheller applied for and obtained a "no knock" search warrant. Detective Batcheller's affidavit supporting the warrant application described Naton's alert, along with other information from two confidential informants. In particular, these informants described Scott's drug activity, including two incidents where Scott discharged a firearm during a drug transaction.

Iowa City police officers executed the search warrant and found Scott in the apartment, along with Nan Sturdy and Shakitta Thompson. The officers seized 15.86 grams of crack cocaine, a small amount of marijuana, a digital scale, and plastic baggies that are typically used to package drugs. While the officers were executing the search warrant, Scott's cell phone rang. Detective Batcheller answered the call, and the caller asked if he could buy three $20 rocks of crack cocaine. Detective Batcheller said, "Yes," and Ron Bowers appeared at the apartment a few minutes later. Although Bowers initially denied that he was there to buy crack cocaine, he eventually admitted that that had been his intent.

On April 23, 2007, three days after the search, Scott was charged in Iowa state court with various drug offenses. On July 2, 2007, Scott was charged in a separate state court indictment with kidnapping, false imprisonment, burglary, assault, and additional drug offenses. And on June 10, 2008, a federal grand jury returned the indictment in this case. The first state court indictment was dismissed on July 24, 2008. The second state court indictment remained pending. After Scott was convicted and sentenced in this case, he pled guilty to false imprisonment and willful injury in the second state court case.

After the district court denied Scott's motion to suppress the evidence obtained during the search, Scott proceeded to trial on the federal drug conspiracy charges. At trial, Sanders testified about his agreement with Scott to move to Iowa City to distribute crack cocaine as well as the quantity of crack they bought and sold. Several other witnesses testified that they accompanied Scott on his trips to Chicago to buy crack cocaine. In addition to the evidence obtained during the search, the Government also produced numerous witnesses who testified that they purchased crack cocaine from Scott at the Lakeside Apartments. The jury convicted Scott of conspiracy to distribute more than fifty grams of crack cocaine.

At sentencing, the parties' arguments focused on whether Scott had "two or more prior convictions for a felony drug offense," which would trigger a mandatory life sentence under 21 U.S.C. § 841(b)(1)(A). The Government proved that Scott was convicted of the felony drug offense of possessing heroin in 1997, when he was sixteen years old. Scott was later convicted of the felony drug offense of possessing crack cocaine in 1998. While the prior convictions were under aliases, the district court found that the Government proved that the person convicted of each crime was actually Scott. In accordance with § 841(b)(1)(A), the district court sentenced Scott to life in prison without the possibility of parole.

## II.    DISCUSSION

Scott's arguments on appeal fall within three categories. Scott first challenges the constitutionality of the search of the apartment. He next challenges the decision to prosecute him in federal, rather than state, court. Finally, he challenges his sentence on constitutional grounds.

Scott makes two arguments relating to the search of the apartment. Scott's primary argument is that the district court abused its discretion in denying him a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978). He also argues that the use of a drug detection dog to sniff the doorframe of his apartment violated the Fourth Amendment. Consequently, Scott argues that the evidence obtained during the subsequent search of the apartment should have been suppressed.

In *Franks*, the Supreme Court held that

> where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause,

the Fourth Amendment requires that a hearing be held at the defendant's request.

*Id.* at 155-56. "The holding of *Franks v. Delaware* also applies to material that has been deliberately or recklessly omitted from a search-warrant affidavit." *United States v. Butler*, 594 F.3d 955, 961 (8th Cir. 2010). Scott argues that a *Franks* hearing was required because Detective Batcheller's affidavit omitted: (1) the fact that the drug dog Naton had once previously given a false alert; (2) the fact that Detective Batcheller could not confirm with other police records the informants' reports that Scott had discharged a firearm during previous drug transactions; and (3) the drug use and criminal histories of the confidential informants. "We review the denial of a *Franks* hearing for abuse of discretion." *United States v. Kattaria*, 553 F.3d 1171, 1177 (8th Cir.) (en banc) (per curiam), *cert. denied*, 558 U.S. ---, 130 S. Ct. 771 (2009).

Even assuming that this information was intentionally or recklessly omitted from Detective Batcheller's affidavit, "[s]uch a finding alone is legally insufficient to justify a *Franks* hearing absent a determination that the intentionally or recklessly omitted information may have . . . otherwise made a probable cause finding unsupportable." *United States v. Williams*, 477 F.3d 554, 558 (8th Cir. 2007). Therefore, we need only address whether "it would have been impossible to find probable cause if the omitted evidence had been included." *See United States v. Jansen*, 470 F.3d 762, 766 (8th Cir. 2006). Probable cause "exists when 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Grubbs*, 547 U.S. 90, 95 (2006) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

Scott asserts that the warrant omitted necessary information that undermined Naton's reliability as a drug detection dog. In his affidavit, Detective Batcheller stated, "I have found K9 Naton to be a very reliable drug detection dog" and that

Naton's "sniffs have led to multiple searches where illegal drugs were found." At the suppression hearing, Officer Berg testified about Naton's reliability but admitted that Naton had once falsely alerted due to the presence of a raccoon under the hood of a car. Scott contends that the affidavit should have included that information. Because "a very low percentage of false positives is not necessarily fatal to a finding that a drug detection dog is properly trained and certified," *United States v. Diaz*, 25 F.3d 392, 396 (6th Cir. 1994), we are satisfied that a single false alert by Naton would not have significantly affected the court's assessment of his reliability. Moreover, Officer Berg testified that Naton's accuracy rating is 98 or 99 percent in training and 85 percent in the field. According to Officer Berg, Naton is a very energetic dog and most of his failures are false negatives, resulting from his moving too quickly and failing to discover where drugs are hidden. Naton's single false positive alert occurred when Naton was young and newly certified as a drug detection dog. Given Naton's overall accuracy record and the additional information in Detective Batcheller's affidavit regarding Scott's drug distribution, the information regarding Naton's one false positive would not have altered the probable cause finding. *See United States v. $30,670*, 403 F.3d 448, 462 (7th Cir. 2005) ("Certainly we may assume that Bax [the dog] is wrong on rare occasion, as evidenced by his handful of false positives over the years. But Bax's high rate of success . . . , coupled with the additional empirical information before us in this case, is more than adequate to indicate his reliability in this case."); *cf. United States v. Donnelly*, 475 F.3d 946, 955 (8th Cir. 2007) (holding that a 54 percent accuracy rating for a drug dog, Baron, did not undermine the existence of probable cause, "taking into account the totality of the circumstances present at the scene . . . , [the defendant's] behavior and condition, Baron's history and pedigree, and Baron's positive indication of drugs within the vehicle").

Scott argues that this case is analogous to *United States v. Jacobs*, 986 F.2d 1231 (8th Cir. 1993). There, a drug detection dog examined a group of packages waiting for shipment. The dog showed interest in one package, but did not alert.

The search warrant application reported the dog's interest in the package, but did not mention that the dog failed to alert to it. We held that the omission of the fact that the dog did not alert, coupled with the lack of other information establishing probable cause to search the package, resulted in a *Franks* violation. *See id.* at 1235. Other than the fact that both cases involved drug detection dogs, *Jacobs* is completely different from this case. Unlike the dog in *Jacobs*, Naton unequivocally alerted at Scott's apartment door. The omission of a single previous false alert in an unrelated incident is entirely distinguishable from the omission of a failure to alert on the very property to be searched. Thus, Scott has not shown that the omission of Naton's one false alert in an unrelated incident, "if included, would destroy a finding of probable cause." *See United States v. Romo-Corrales*, 592 F.3d 915, 919 (8th Cir. 2010).

Turning to the second allegedly material omission, Scott argues that the omission of Detective Batcheller's inability to confirm, using other police records, the confidential informants' reports of Scott's discharges of firearms also requires a *Franks* hearing. Scott again fails to show that "it would have been impossible to find probable cause if the omitted evidence had been included." *See Jansen*, 470 F.3d at 766. The reports of Scott's use of firearms were relevant primarily to the "no knock" provision of the warrant.[2] Moreover, even if the omitted information was included, the warrant still would have supported a finding of probable cause based on Naton's positive alert. *See United States v. Olivera-Mendez*, 484 F.3d 505, 512 (8th Cir. 2007) ("[A] dog's positive indication alone is enough to establish probable cause for the presence of a controlled substance if the dog is reliable." (citation and internal

---

[2]Under Iowa law, officers generally must "knock and announce" before executing a search warrant. *See* Iowa Code § 808.6; *State v. Cohrs*, 484 N.W.2d 223, 225 (Iowa 1992). A "no knock" warrant allows police to execute the warrant without warning, but this authorization is independent of the probable cause finding underlying the warrant as a whole. Typically, "a no-knock entry [is] justified where the officers knew the house contained weapons and one of the occupants was considered dangerous." *United States v. Stevens*, 439 F.3d 983, 989 (8th Cir. 2006).

quotation marks omitted)). As a result, this information regarding Detective Batcheller's inability to confirm the confidential informants' reports of Scott's use of firearms would not have significantly affected the finding of probable cause for this drug distribution investigation.

Finally, Detective Batcheller's affidavit failed to disclose that at least one of the two confidential informants had a prior criminal history and that both of them used drugs. "We have held that probable cause is not defeated by a failure to inform the magistrate judge of an informant's criminal history if the informant's information is at least partly corroborated." *Williams*, 477 F.3d at 559-60. The affidavit contained ample evidence corroborating the confidential informants' statements. For instance, the first informant stated that Scott and Sturdy were selling crack cocaine out of a specific apartment. The second informant also reported that Scott and Sturdy were selling crack cocaine. Detective Batcheller confirmed that the apartment the first informant identified was leased to Sturdy, who Detective Batcheller knew had prior involvement with illegal drugs. More importantly, Naton's alert strongly corroborated both informants' statements that drugs were present in the apartment. *See Olivera-Mendez*, 484 F.3d at 512. With respect to the informants' drug use, Scott has made no showing that their drug use affected their ability to provide accurate information or otherwise impacted the probable cause finding. *See United States v. Martin*, 866 F.2d 972, 979 (8th Cir. 1989) (holding that omission from warrant application of informant's drug addiction "was of no consequence to the determination of probable cause"); *United States v. Wilson*, 324 Fed. App'x 546, 548 (8th Cir. 2009) (unpublished per curiam) ("[T]here is no evidence that the [confidential informant's] drug use . . . affected her ability to relay accurate information to police."). In summary, Scott has not shown, as to any of these allegedly material omissions, that "it would have been impossible to find probable cause if the omitted evidence had been included," *see Jansen*, 470 F.3d at 766, and therefore the district court did not abuse its discretion in denying Scott's request for a *Franks* hearing.

Scott next argues that the use of a drug detection dog to sniff the exterior door frame of his apartment violated the Fourth Amendment's prohibition on unreasonable searches. Scott does not dispute that the police were lawfully present in the common hallway, nor does he dispute the other facts surrounding Naton's sniff and alert. Thus, we "review de novo the ultimate question of whether the Fourth Amendment has been violated." *United States v. Etsey*, 595 F.3d 836, 839-40 (8th Cir.) (quoting *United States v. Williams*, 577 F.3d 878, 880 (8th Cir. 2009)), *cert. denied*, 560 U.S. ---, 2010 WL 1653557 (May 24, 2010).

In similar circumstances, we have upheld the use of a drug dog to sniff the door of a hotel room from the hotel's corridor. *See United States v. Roby*, 122 F.3d 1120, 1124 (8th Cir. 1997). In both *Roby* and the present case, the dog sniffs occurred in a place where law enforcement was lawfully present. While a person's privacy interests in a hotel room and in an apartment may differ, *see United States v. Washington*, 573 F.3d 279, 285 (6th Cir. 2009), any such differences are immaterial here because Scott had no legitimate privacy interest in the illegal drugs that Naton's sniff detected.

"Official conduct that does not 'compromise any legitimate interest in privacy' is not a search subject to the Fourth Amendment." *Illinois v. Caballes*, 543 U.S. 405, 408 (2005) (quoting *United States v. Jacobsen*, 466 U.S. 109, 123 (1984)). "[A]ny interest in possessing contraband cannot be deemed 'legitimate,' and thus, governmental conduct that *only* reveals the possession of contraband 'compromises no legitimate privacy interest.'" *Id.* (quoting *Jacobsen*, 466 U.S. at 123). A narcotics dog sniff is precisely that kind of conduct, because it "discloses only the presence or absence of narcotics, a contraband item." *Id.* at 409 (quoting *United States v. Place*, 462 U.S. 696, 707 (1983)); *see also Roby*, 122 F.3d at 1124 (8th Cir. 1997) ("Because a dog's sniff 'could reveal nothing about non-contraband items,' it does not generally intrude into a person's reasonable expectation of privacy." (quoting *Jacobsen*, 466 U.S. at 124 n.24)). Scott has provided no reason for distinguishing *Caballes* and *Roby*, and we can find none. Thus, Supreme Court and Eighth Circuit precedent

support the conclusion that Naton's sniff of the apartment door frame from a common hallway did not constitute a search subject to the Fourth Amendment.

We reject Scott's argument that this court should extend the holding in *Kyllo v. United States*, 533 U.S. 27 (2001), to encompass dog sniffs. Indeed, the Supreme Court rejected such an interpretation of *Kyllo* in *Caballes*. *See* 543 U.S. at 409-410. In *Kyllo*, the Supreme Court held that "obtaining by sense-enhancing technology any information regarding the interior of the home that could not otherwise have been obtained without physical intrusion into a constitutionally protected area, constitutes a search—at least where (as here) the technology in question is not in general public use." *Kyllo*, 533 U.S. at 34 (citation and internal quotation marks and citations omitted). Unlike the thermal imaging technology at issue in *Kyllo*, narcotics dog sniffs are not "capable of detecting lawful activity." *Caballes*, 543 U.S. at 409. Thus, the Supreme Court has treated narcotics dog sniffs as "*sui generis*." *Place*, 462 U.S. at 707. We see no reason to do otherwise. *See United States v. Brock*, 417 F.3d 692, 696-97 (7th Cir. 2005) (rejecting an identical argument that *Kyllo* should apply to dog sniffs). We therefore affirm the district court's denial of Scott's motion to suppress.

Scott next challenges the decision to prosecute him in federal, rather than state, court. His brief variously styles this argument as an allegation of "vindictive prosecution," "selective prosecution," and "double jeopardy."[3] The crux of Scott's argument is that he was only charged in federal court after his pending state court kidnapping case appeared to be "going badly" and that a federal indictment would accomplish the allegedly shared prosecutorial goal of incarcerating Scott for the rest of his life. "This court reviews a district court's denial of a motion to dismiss an indictment on a claim of selective or vindictive prosecution for an abuse of discretion." *United States v. Hirsch*, 360 F.3d 860, 863 (8th Cir. 2004).

---

[3]At oral argument, Scott's attorney clarified that Scott is not, in fact, raising a double jeopardy claim.

To prevail on his selective prosecution claim, Scott must show that "(1) he was singled out for prosecution while others similarly situated were not prosecuted for similar conduct, and (2) the decision to prosecute him was based on an impermissible motive such as race, religion, or an attempt by the defendant to secure other constitutional rights." *United States v. Rodriguez*, 581 F.3d 775, 815 (8th Cir. 2009), *petition for cert. filed*, --- U.S.L.W. ---- (U.S. June 10, 2010) (No. 09-11360). Scott notes that several of his co-conspirators were not charged in federal court and argues that he is similarly situated to them. Even assuming Scott is similarly situated to these co-conspirators, Scott has utterly failed to satisfy the second requirement. Scott concedes that the decision to prosecute him in federal court was not based on race, and he has not identified any other impermissible motive or any constitutional right he was attempting to secure which might have led to this federal prosecution. While Scott observes that he was vigorously exercising his state-law rights to discovery in the state court prosecutions, those are not federal constitutional rights. *See Weatherford v. Bursey*, 429 U.S. 545, 559 (1977) ("There is no general constitutional right to discovery in a criminal case."). The district court did not abuse its discretion in denying Scott's motion to dismiss based on his claim of selective prosecution.

To prevail on his vindictive prosecution claim, Scott must show "bad faith or maliciousness" on the part of the prosecutor. *See Hirsch*, 360 F.3d at 864. Scott has failed to make any such showing. "A mere allegation the government was prosecuting defendant because it was upset over losing at trial is not enough to establish vindictiveness." *Id.* Thus, Scott's claim that he was charged in federal court because his state case was "going badly" likewise is insufficient to show vindictiveness. Even if the state prosecutors acted vindictively in referring the case for federal prosecution, this is insufficient to show that federal prosecutors acted vindictively in bringing the case. *See United States v. Leathers*, 354 F.3d 955, 960 (8th Cir. 2004) ("A referral made by a state prosecutor does not undermine the independence of federal prosecutors, regardless of the state prosecutor's motives in making the referral."). The

district court did not abuse its discretion in denying Scott's motion on this ground either.

Scott makes a two-fold challenge to the constitutionality of his life sentence. First, he argues that his life sentence is grossly disproportionate and thus runs afoul of the Eighth Amendment's prohibition against cruel and unusual punishments. Second, Scott notes that he was less than 18 years old at the time of his previous two felony drug convictions, and he contends that this Court should extend Eighth Amendment precedents concerning constitutional limits on sentencing of juvenile offenders to bar consideration of his prior convictions. *See Graham v. Florida*, 560 U.S. ---, 130 S. Ct. 2011 (2010); *Roper v. Simmons*, 543 U.S. 551 (2005). "This court reviews de novo an Eighth Amendment challenge to a sentence." *United States v. Wiest*, 596 F.3d 906, 911 (8th Cir. 2010).

Existing circuit precedent effectively forecloses Scott's first argument, that his sentence is grossly disproportionate. We have repeatedly affirmed the constitutionality of life sentences under 21 U.S.C. § 841(b)(1)(A). *See, e.g.*, *United States v. Williams*, 534 F.3d 980, 986 (8th Cir. 2008); *United States v. Whiting*, 528 F.3d 595, 597 (8th Cir. 2008) (per curiam); *United States v. Whitehead*, 487 F.3d 1068, 1070-71 (8th Cir. 2007); *United States v. Collins*, 340 F.3d 672, 679-80 (8th Cir. 2003). "Possession, use, and distribution of illegal drugs represent 'one of the greatest problems affecting the health and welfare of our population.' . . . [The defendant's] crime threatened to cause grave harm to society." *Harmelin v. Michigan*, 501 U.S. 957, 1002 (1991) (Kennedy, J., concurring in part and concurring in the judgment). Scott's case is not "the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." *Ewing v. California*, 538 U.S. 11, 30 (2003) (plurality opinion) (quoting *Harmelin*, 501 U.S. at 1005 (Kennedy, J., concurring in part and concurring in the judgment)).

-12-

Finally, Scott argues that the Eighth Amendment prohibits enhancing his sentence based on his previous felony drug convictions because he was a juvenile when he committed those crimes. We note that while Scott committed his prior felony drug offenses as a juvenile, he was charged and convicted of both crimes as an adult. Nonetheless, we have upheld the use of juvenile court adjudications to enhance subsequent sentences for adult convictions. *See United States v. Smalley*, 294 F.3d 1030, 1032-33 (8th Cir. 2002). Given the holding in *Smalley* that juvenile court adjudications may be used for enhancement purposes, we see no reason that convictions for crimes committed by juveniles who are convicted as adults cannot be similarly used.

The U.S. Supreme Court cases that Scott cites, *Roper* and *Graham*, do not change this result. These decisions established constitutional limits on certain sentences for offenses committed by juveniles. However, Scott was twenty-five years old at the time he committed the conspiracy offense in this case. Neither *Roper* nor *Graham* involved the use of prior offenses committed as a juvenile to enhance an adult conviction, as here. The *Roper* decision addressed the constitutionality of imposing the death penalty for a murder committed by a juvenile and does not call into question our decision in *Smalley*. *See United States v. Kirkland*, 450 F.3d 804, 805 (8th Cir. 2006) (applying *Smalley* after *Roper*). Similarly, the Court's analysis in *Graham* was limited to defendants sentenced to life in prison without parole for crimes committed as juveniles. The Court in *Graham* did not call into question the constitutionality of using prior convictions, juvenile or otherwise, to enhance the sentence of a convicted adult. Therefore, we affirm the constitutionality of Scott's life sentence under 21 U.S.C. § 841(b)(1)(A).

## III. CONCLUSION

For the foregoing reasons, we affirm Scott's conviction and sentence.

_____