# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-2285

_____

United States of America

*Plaintiff - Appellee*

v.

Justin Davis

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Northern District of Iowa - Cedar Rapids

_____

Submitted: April 16, 2014
Filed: July 29, 2014

_____

Before LOKEN and MURPHY, Circuit Judges, and LIMBAUGH,* District Judge.

_____

LOKEN, Circuit Judge.

Justin Davis entered a conditional plea of guilty to possessing marijuana with intent to distribute after his motion to suppress evidence found during a warrant search of his apartment was denied. The search warrant application was based in part

*The Honorable Stephen N. Limbaugh, Jr., United States District Judge for the Eastern District of Missouri, sitting by designation.

on a drug-detection dog's sniff outside the apartment's front door. After the motion to suppress was briefed and argued, but before the court ruled, the Supreme Court issued its decision in <u>Florida v. Jardines</u>, holding that "[t]he government's use of trained police dogs to investigate the home and its immediate surroundings is a 'search' within the meaning of the Fourth Amendment." 133 S. Ct. 1409, 1417-18 (2013). The district court[1] assumed that <u>Jardines</u> invalidated the dog sniff and therefore the search warrant but nonetheless denied the motion to suppress, concluding that "the <u>Leon</u> good-faith exception applies"[2] because the officers executing the warrant "could have reasonably believed that the dog sniff at the door to Apartment 5 was lawful in light of the Eighth Circuit's decision in <u>United States v. Scott</u>, 610 F.3d 1009 (8th Cir. 2010)," <u>cert. denied</u>, 131 S. Ct. 964 (2011). Davis appeals the denial of his motion to suppress. Reviewing Fourth Amendment issues *de novo*, we affirm. <u>See</u> <u>United States v. Cannon</u>, 703 F.3d 407, 412 (8th Cir.) (standard of review), <u>cert. denied</u>, 133 S. Ct. 2375 (2013).

## I.

In 2012, Davis was serving a term of probation following an Iowa state court drug conviction. On December 12, Cedar Rapids police advised Probation Officer Steve Warner that a black Buick Riviera associated with Davis had been seen at the Cambridge Apartment Complex. Warner located the Riviera parked next to a building in the complex and positioned his unmarked vehicle to watch the area. Over

---

[1]The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa, adopting in part the Report and Recommendation of the Honorable Jon S. Scoles, Chief Magistrate Judge, United States District Court for the Northern District of Iowa.

[2]<u>United States v. Leon</u>, 468 U.S. 897, 922 (1984), held that, with certain exceptions, the Fourth Amendment's exclusionary rule does not require suppression of "evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant."

the course of an hour, Warner saw three men enter and quickly leave Apartment 5, where the Riviera was parked, and he saw Davis exit Apartment 5 and approach a red car parked next to the Riviera, which then quickly left. Suspecting on-going drug transactions, Warner called Officer Jeff Gilson, a local police canine handler, and asked him to bring his drug-detection dog, Bruno, to the building. While waiting for Gilson, Warner saw Davis meet a woman in the building's yard and escort her into Apartment 5; she left less than a minute later.

Gilson arrived, wearing plain clothes and escorting Bruno. At Warner's request, Gilson instructed Bruno to sniff outside each apartment door, starting at the south end of the building. The building had four doors opening directly into the apartments. The third door from the south end was Apartment 5; a few inches away was the door to the next apartment, with two mailboxes mounted one above the other on the wall between the two doors. A single sidewalk ran from the parking area to both doors. Bruno detected no drug odors until he reached Apartment 5, where he snorted and assumed a "locked position," with his nose touching the bottom of the door. Bruno moved to the last door and quickly returned to Apartment 5, where he again alerted. Davis opened the door and asked Gilson what he was doing. While Davis and Gilson chatted, Bruno attempted to enter the apartment and then sat in the corner of the doorway, again indicating he detected the scent of narcotics. Davis closed the door. Gilson and Bruno met with Warner.

Concerned that Davis had recognized a police dog and would destroy evidence of drug trafficking, Warner and two police officers knocked on the door to Apartment 5. Erica Lewis answered, cracking open the door, which allowed Warner to see Davis sitting on a couch in the room. Warner entered the apartment and placed Davis in custody. The officers discovered a scale and "green leafy substance" on the kitchen table while checking the apartment for other occupants. With the apartment secured, Warner left to apply for a search warrant. In his supporting affidavit, Warner recounted the string of visitors to the apartment, the events surrounding Bruno's

alerts, and the events following Warner's knock on the door, but not the discovery of the scale and green leafy substance. The state court issued the search warrant. The officers promptly searched Apartment 5 and seized marijuana and cash.

Davis moved to suppress this evidence, arguing the dog sniff at his apartment door without a warrant violated the Fourth Amendment and therefore could not be used to establish probable cause, invalidating the warrant and the subsequent warrant search of his apartment. On February 5, 2013, Magistrate Judge Scoles recommended that Davis's motion be denied for three reasons. First, the dog sniff was not a search subject to the Fourth Amendment, an issue "governed" by our decision in Scott and then-existing Supreme Court precedent. Second, even if the dog sniff was excluded, the warrant affidavit reciting a series of short-term visitors to Apartment 5 sufficiently supported the finding of probable cause to issue the warrant. Third, even if the warrant was not valid, the officers executed the warrant in good faith, so evidence found during the warrant search should not be excluded under Leon.

On March 4, Davis entered a conditional guilty plea, reserving the right to pursue his suppression motion in the district court and on appeal. On March 26, the Supreme Court issued its decision in Jardines. On April 16, the district court denied the motion to suppress, concluding only that the good faith exception applied. Like the district court, we will consider only the good faith issue, assuming without deciding that the warrantless dog sniff outside the door to Apartment 5 violated Davis's Fourth Amendment rights as construed in Jardines.

## II.

"A violation of the Fourth Amendment usually triggers exclusion of evidence 'obtained by way of' the violation from a subsequent criminal prosecution." United States v. Barraza-Maldonado, 732 F.3d 865, 867 (8th Cir. 2013), quoting Davis v. United States, 131 S. Ct. 2419, 2423 (2011). "The exclusionary rule prohibits

introduction into evidence of tangible materials seized during an unlawful search . . . . Beyond that, the exclusionary rule also prohibits the introduction of derivative evidence . . . that is otherwise acquired as an indirect result of the unlawful search." Murray v. United States, 487 U.S. 533, 536-37 (1988).

Applying the exclusionary rule, we have held in many cases that "[t]he sufficiency of a warrant affidavit which contains information from an unlawful search is evaluated after deleting that information." United States v. Hernandez Leon, 379 F.3d 1024, 1027 (8th Cir. 2004), and cases cited. But we have also applied the Leon good faith exception when the warrant was based on evidence obtained through a Fourth Amendment violation if "the detectives' prewarrant conduct [was] close enough to the line of validity to make the officers' belief in the validity of the warrant objectively reasonable." Cannon, 703 F.3d at 413 (quotation omitted). The district court applied the rule in Cannon because, at the time of the dog sniff, the officers could reasonably rely on our decision in Scott as establishing that no warrant to conduct a sniff outside the apartment was required.

On appeal, Davis argues that suppression of evidence found in executing an invalid warrant cannot be denied under the Leon good faith doctrine when the invalidity results from a "predicate illegal search," here, a dog sniff violating his constitutional rights under Jardines. Therefore, he argues, the district court should have applied the affidavit-deletion rule in Hernandez Leon or, alternatively, should have concluded that the officers' "aggressive" use of the controversial dog sniff procedure was not "close enough to the line" to warrant the Leon good faith exception under Cannon. We conclude that we need not resolve those issues, which relate to the proper scope of the Leon exception, because this case is governed by the distinct exception to the exclusionary rule in Davis.

In Davis, the Supreme Court held that "[e]vidence obtained during a search conducted in reasonable reliance on binding precedent *is not subject to the*

-5-

*exclusionary rule*." 131 S. Ct. at 2429 (emphasis added). When an otherwise valid search warrant is based upon evidence obtained in a prior warrantless search that violated the Fourth Amendment, it is the exclusionary rule that prohibits use of this derivative evidence to establish the probable cause needed to obtain a valid warrant. See Leon, 468 U.S. at 918 ("suppression of evidence obtained pursuant to a warrant should be ordered . . . only [when] exclusion will further the purposes of the exclusionary rule"); Segura v. United States, 468 U.S. 796, 813-15 (1984). Thus, if the evidence uncovered by Bruno's sniff was not subject to the exclusionary rule under Davis, then it was properly used to obtain a valid warrant, and there was no basis to suppress evidence seized during the subsequent warrant search.

Prior to Officer Gilson instructing Bruno to sniff for narcotics outside the door to Apartment 5 at Probation Officer Warner's request, we held that a drug-detection dog's "sniff of the apartment door frame from a common hallway did not constitute a search subject to the Fourth Amendment." Scott, 610 F.3d at 1015-16. Here, Bruno sniffed Apartment 5's door frame from a common walkway. Magistrate Judge Scoles ruled, before the Supreme Court decided Jardines, that our decision in Scott "governed" whether Bruno's sniff was a search subject to the Fourth Amendment. This confirms that the officers acted in objectively reasonable reliance on binding appellate precedent in conducting a warrantless dog sniff outside the apartment door.

Davis argues that the good faith exception in Davis should not apply to the dog sniff because Scott was not longstanding precedent at the time of the search and dog sniffs of residences were not routine law enforcement practices, unlike the officers' reliance on longstanding Eleventh Circuit precedent in Davis, 131 S. Ct. at 2425-26. The premise of the argument is unsound, because our Fourth Amendment analysis in Scott was well-grounded in a prior dog-sniff decision of this court, United States v. Roby, 122 F.3d 1120, 1124-25 (8th Cir. 1997), and in the Supreme Court's dog-sniff decision in United States v. Place, 462 U.S. 696 (1983), on which Roby relied. Moreover, nothing in the majority opinion in Davis suggested that its good faith

exception is limited to longstanding judicial precedent or to routine law enforcement practices. "[W]hen binding appellate precedent specifically *authorizes* a particular police practice," the Court explained, "well-trained officers will and should use that tool to fulfill their crime-detection and public-safety responsibilities." Davis, 131 S. Ct. at 2429 (emphasis in original). Applying the exclusionary rule in these circumstances would "penalize the officer for the appellate judges' error." Id.

Davis further argues that the officers could not have reasonably relied on Scott because the Supreme Court had heard argument in Jardines, casting doubt on Scott's vitality. We rejected that argument in Barraza-Maldonado, concluding that officers reasonably relied on binding circuit precedent when, without a warrant, they installed a GPS device to monitor the movements of a car prior to the Supreme Court's decision in United States v. Jones, 132 S. Ct. 945 (2012). "Officers should not be faulted for adhering to existing precedent until that precedent is authoritatively overruled," we explained. Barraza-Maldonado, 732 F.3d at 869. "When the police comply with authoritative precedent, only to see the law evolve after the fact, there is nothing to deter; the police cannot modify their conduct to accord with cases not yet decided." Id., quoting United States v. Sparks, 711 F.3d 58, 63 (1st Cir.), cert. denied, 134 S. Ct. 204 (2013). The same is true in this case. Scott had not been "authoritatively overruled" at the time of the dog sniff in question.

Because the officers reasonably relied on binding circuit precedent in conducting a dog sniff outside the door to Apartment 5, the exclusionary rule did not apply to preclude use of that evidence in the search warrant application. Therefore, the warrant was valid, and Davis's motion to suppress was properly denied.

The judgment of the district court is affirmed.

_____