# United States Court of Appeals

### For the Eighth Circuit

_____

No. 13-2452

_____

United States of America

*Plaintiff - Appellee*

v.

Eric Michelle Hunter

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota - St. Paul

_____

Submitted: June 12, 2014
Filed: October 28, 2014

_____

Before LOKEN, BRIGHT, and GRUENDER, Circuit Judges.

_____

LOKEN, Circuit Judge.

Following numerous controlled buys of various controlled substances, wiretap surveillance, and a warrant search of an apartment leased by Eric Michelle Hunter and Rikki Gilow, an indictment charged Hunter, Gilow, and Jerry Harvey with numerous federal offenses. Gilow and Harvey pleaded guilty. After a three-day trial, the jury convicted Hunter of conspiracy to distribute controlled substances; five counts of aiding and abetting distribution of controlled substances; one count of possession

with intent to distribute heroin and a designer drug; two counts of being a felon in possession of a firearm; one count of attempted witness tampering; and two counts of aiding and abetting the use and carrying of a firearm during and in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c). The district court[1] sentenced Hunter to consecutive sentences of 60 months and life in prison for the § 924(c) convictions, see 18 U.S.C. § 924(c)(1)(A)(i), (C)(ii), and (D)(ii), and to two concurrent life terms and eight concurrent 240-month terms for the remaining offenses. Hunter appeals. We affirm.

## I.

Hunter first argues the district court erred in denying his motion to suppress evidence found during the July 2012 warrant search of his apartment. The warrant application was accompanied by an affidavit averring that a trained narcotics dog had "alerted to the presence of a controlled substance at the threshold" of Hunter's second floor apartment. Hunter's motion to suppress argued that the dog sniff violated the Fourth Amendment as subsequently construed by the Supreme Court in Florida v. Jardines, 133 S. Ct. 1409, 1417-18 (2013) ("use of trained police dogs to investigate the home and its immediate surroundings is a 'search' within the meaning of the Fourth Amendment"). The district court, adopting the Report and Recommendation of United States Magistrate Judge Franklin Noel, rejected this contention, concluding that, even if the dog sniff was unlawful and the warrant affidavit failed to establish probable cause without that evidence, contraband seized during the warrant search was admissible under the good faith exception to the exclusionary rule adopted in United States v. Leon, 468 U.S. 897, 922-23 (1984). Hunter argues on appeal that his motion to suppress should have been granted based on the unconstitutional dog sniff.

_____

[1]The Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota.

We need not decide whether the dog sniff violated the Fourth Amendment as construed in Jardines because suppression of the evidence seized during the warrant search is foreclosed by our recent decision in United States v. Davis, 760 F.3d 901, 903-04 (8th Cir. 2014). "Evidence obtained during a search conducted in reasonable reliance on binding precedent is not subject to the [Fourth Amendment] exclusionary rule." Davis v. United States, 131 S. Ct. 2419, 2429 (2011). When the police dog sniffed outside the door to Hunter's apartment from a common hallway, binding Eighth Circuit precedent had established that a "sniff of the apartment door frame from a common hallway did not constitute a search subject to the Fourth Amendment." United States v. Scott, 610 F.3d 1009, 1015-16 (8th Cir. 2010), cert. denied, 131 S. Ct. 964 (2011); see United States v. McGrane, 746 F.2d 632, 634-35 (8th Cir. 1984), citing United States v. Eisler, 567 F.2d 814, 816 (8th Cir. 1977). Because the officers in obtaining and executing the warrant reasonably relied on binding precedent confirmed in Scott, "the exclusionary rule did not apply to preclude use of [the drug dog's] evidence in the search warrant application," and Hunter's motion to suppress was properly denied. Davis, 760 F.3d at 905.

## II.

Hunter next claims he was denied a fair trial because of prosecutorial misconduct during examination of government witnesses and closing argument. To obtain relief on this ground, Hunter must show "(1) the prosecutor's remarks or conduct were improper, and (2) the remarks or conduct affected the defendant's substantial rights so as to deprive him of a fair trial." United States v. New, 491 F.3d 369, 377 (8th Cir. 2007). We determine whether the challenged conduct "deprived the defendant of a fair trial by examining the cumulative effect of the misconduct, the strength of the properly admitted evidence of the defendant's guilt, and any curative actions taken by the trial judge." Id.

**A.** During the second day of trial, Officer Steven Stoler of the Burnsville Police Department described controlled purchases he had made while working undercover for the Dakota County Task Force. When he made one drug purchase from Gilow, Stoler testified, "Whitney Serie . . . and I believe there was either one or two kids in the car" with Gilow. The prosecutor asked a further question about "persons selling drugs bringing other people with them, including children." Defense counsel objected and, after a discussion off the record, the district court announced, "I have sustained an objection to any reference to children."

Later that same day, while testifying to an undercover drug purchase from Hunter, Special Agent Almgren testified: "As we approached the Ford Explorer, [Hunter] told me to wait and he said, 'while she gets the kids out.' At that time, the driver, who I recognized as Whitney Serie, removed two small children from the back of the Ford Explorer." Defense counsel objected; before the court ruled, the prosecutor said, "If we can confine your testimony to Serie, the defendant and Gilow." Testimony proceeded, and the district court took up defense counsel's motion for a mistrial after the court dismissed the jury for the day. Counsel argued that two different witnesses had prejudiced Hunter's defense by making inflammatory references to children being present at the scene of drug deals. The district court denied a mistrial, explaining that testimony as to "who was present at the time of the transaction" was relevant, neither prosecutor had purposefully elicited testimony contrary to the court's ruling regarding children, and the agents' testimony was not so inflammatory "as to prejudice Mr. Hunter's right to a fair trial." The court instructed the prosecutors "not to make any mention during closing arguments or any further proceedings . . . of children." No such references were made.

On appeal, Hunter argues that the prosecutors committed prejudicial misconduct when they "continued to push the presence of children forward after being told not to" by the district court. Like the district court, we conclude there was neither misconduct nor prejudice. The questions sought to elicit relevant testimony

-4-

about who was present at sales of controlled substances. If a jury views taking children along to illegal drug transactions as prejudicial, that is not unfair prejudice. See United States v. Hester, 140 F.3d 753, 759 (8th Cir. 1998). The district court nonetheless took prompt action to avoid undue prejudice by instructing government witnesses not to mention children when describing undercover drug purchases. The subsequent questioning of both agents did not violate that ruling. The substantial evidence of Hunter's guilt is relevant in deciding whether these limited references to children had a seriously prejudicial effect that denied Hunter a fair trial. See United States v. Hernandez, 779 F.2d 456, 461 (8th Cir. 1985). There was no abuse of discretion in denying his mistrial motion. Cf. United States v. Davidson, 122 F.3d 531, 537-38 (8th Cir.), cert. denied, 522 U.S. 1034 (1997).

**B.** Hunter argues the prosecutor prejudicially demeaned Hunter by referring to him during closing argument as a "big dog." In describing the roles of Gilow and Hunter in the alleged conspiracy, the prosecutor argued:

> Because there is this evolution of this case where for awhile it is maybe just Rikki Gilow just selling some drugs, right? But then the case -- the case gets more serious, the big dogs come around. Special Agent Almgren, the big dog about selling guns, and this is when we see defendant really kind of coming out of the shadows. It's time for the big dogs to meet. And that's when, later on in this investigation, you can really see who defendant is and what his role is.

As Hunter did not object to this argument and did not move for a mistrial, we review this contention, if at all, for plain error. See United States v. Green, 560 F.3d 853, 859 (8th Cir.), cert. denied, 558 U.S. 879 (2009). We find no plain error here. The prosecutor used the phrase "big dogs" to assert that Almgren was meeting a high-ranking member of the alleged conspiracy "about selling guns," an inference supported by the evidence. Use of the phrase "big dogs" was not improper, much less plainly so, as there is no indication the jury understood the term as injecting social

status or race into the case, as Hunter suggests on appeal.  See United States v. Macklin, 104 F.3d 1046, 1049-50 & n.5 (8th Cir.), cert. denied, 522 U.S. 891 (1997).

**C.**  Finally, Hunter argues his trial defense was improperly disparaged when the prosecutor stated during closing argument, "Perhaps defendant's only real defense here could be an argument about the integrity of [the government's physical] evidence of those drugs" purchased by the undercover agents.  The district court overruled defense counsel's cryptic objection, "improper argument."  The prosecutor then responded to Hunter's theory that the drugs had been contaminated by poor handling at a local government forensic laboratory.

On appeal, Hunter argues the government's comment on his "only real defense" clearly disparaged any other theory put forward by the defense.  We disagree.  Read in context, the statement merely asserted that Hunter's "only real defense" *to the physical drug evidence* was to question its integrity, not that he only had one "real defense" to all charges.  In any event, a prosecutor may comment on the strength or credibility of the defense case.  See United States v. Frokjer, 415 F.3d 865, 874 (8th Cir. 2005); United States v. Jaswal, 47 F.3d 539, 544 (2d Cir. 1995).  The district court did not abuse its broad discretion to control closing arguments when it overruled Hunter's unfocused objection.

### III.

Hunter argues that, in imposing three life sentences, the district court violated his Sixth Amendment right to trial by jury as construed in Alleyne v. United States, 133 S. Ct. 2151, 2155 (2013), which extended the Court's prior decision in Apprendi v. New Jersey, 530 U.S. 466 (2000), to include facts that increase a mandatory minimum sentence established by statute. Hunter argues that Alleyne invalidated two aspects of his sentence.  First, he challenges the determination that he is a career offender based on two qualifying prior felony convictions; that determination

-6-

increased his advisory guidelines range to life in prison for the drug conspiracy and possession with intent to distribute offenses. See U.S.S.G. § 4B1.1(c)(2). Second, he challenges the mandatory life sentence imposed because his second felon-in-possession offense involved a machine gun. See 18 U.S.C. § 924(c)(1)(C)(ii).

This contention is foreclosed by our prior decisions. First, in United States v. Alvarez, 320 F.3d 765, 767 (8th Cir. 2003), we held that the Supreme Court in Apprendi did not overrule Almendarez-Torres v. United States, 523 U.S. 224 (1998), and therefore district courts may continue to impose career offender enhancements without having a jury determine the fact of prior convictions. Second, in United States v. Abrahamson, we upheld a post-Alleyne challenge to an enhanced mandatory minimum statutory sentence, concluding that "Alleyne left intact the rule that enhancements based on the fact of a prior conviction are an exception to the general rule that facts increasing the prescribed range of penalties must be presented to a jury." 731 F.3d 751, 752 (8th Cir. 2013), cert. denied, 134 S. Ct. 1565 (2014). Thus, at least in this circuit, Almendarez-Torres remains controlling precedent.

## IV.

Prior to trial, some weeks after the district court appointed new counsel at Hunter's request, Hunter complained that new attorney Thomas Plunkett was not willing to pursue issues Hunter wanted pursued. The court then permitted Hunter to proceed *pro se*, with Plunkett serving as stand-by counsel. On the morning of trial, Hunter announced he wished to end *pro se* status and have Plunkett represent him at trial. The court agreed after questioning Hunter at length to make certain he understood the consequences of this decision. Plunkett then served as appointed counsel at trial and sentencing, and has continued to represent Hunter on appeal.

With the appeal pending, Hunter filed a motion for appointment of new counsel, complaining that Plunkett was refusing to order the sentencing transcript and

raise meritorious sentencing issues on appeal. We denied the motion, and Plunkett filed his Brief of Appellant. Hunter then filed a motion to reconsider, arguing he needed new appellate counsel so he could raise issues of ineffective assistance by attorney Plunkett. We denied that motion. After the government filed its appeal brief, Hunter filed a Motion for Leave To File a Pro Se Supplemental Brief raising numerous issues and, two months later, a pleading entitled Supplementary Memorandum Proposed Findings of Fact and Conclusions of Law. Those motions remain pending.

We deny the pending pro se motions. It has long been Eighth Circuit policy "that when a party is represented by counsel, we will not accept pro se briefs for filing." United States v. Payton, 918 F.2d 54, 56 n.2 (8th Cir. 1990), cert. denied, 502 U.S. 948 (1991). As in United States v. Donnell, 596 F.3d 913, 925-26 (8th Cir. 2010), cert. denied, 131 S. Ct. 994 (2011), we see no reason to deviate from that general rule in this case. Hunter has demonstrated a persistent unwillingness to accept the advice and assistance of appointed counsel -- except when it suits him. Now, he submits multi-page *pro se* filings on appeal, seeking to raise issues of ineffective assistance of trial and appellate counsel, which we almost never take up on direct appeal; a complaint that he was improperly sentenced as a career offender because one of his prior convictions was not a qualifying felony, when his sentence was dictated by three life sentences, one mandated by statute; and claims of pretrial and trial error that attorney Plunkett has not raised. Any claim that Hunter was prejudiced by counsel's unreasonable refusal to raise an issue on direct appeal may be asserted as a claim of ineffective assistance of appellate counsel in a post-conviction motion under 28 U.S.C. § 2255. As in United States v. Moore, 481 F.3d 1113, 1114 n.2 (8th Cir.), cert. denied, 552 U.S. 853 (2007), we decline to consider these issues further on direct appeal.

The judgment of the district court is affirmed. We deny Hunter's motions for leave to file a supplemental *pro se* brief and a Supplementary Memorandum.

BRIGHT, Circuit Judge, concurring.

I concur with the majority's result, but write separately to express my view that Hunter's sentence, including his mandatory life sentence, is "out of this world." This case is yet "another example of a harsh sentence that is required for a non-violent crime in what now seems generally recognized as this country's continuing but unsuccessful War on Drugs." *Walking Eagle v. United States*, 742 F.3d 1079, 1083 n.2 (8th Cir. 2014).

Hunter's mandatory life sentence stems from his convictions on two counts of aiding and abetting the use and carrying of a firearm during and in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1). The second count related to Hunter arranging a transaction in which his girlfriend sold a detectable amount of heroin and a firearm to an undercover law enforcement agent. Because the firearm sold was considered a "machinegun," Hunter will spend the rest of his living days behind bars. *See* 18 U.S.C. § 924(c)(1)(C)(ii).

Today, I join in the litany of criticisms directed towards Congress's overly harsh mandatory minimum sentences set forth in 18 U.S.C. § 924(c). *See, e.g.*, *United States v. Smith*, 756 F.3d 1179, 1194 (10th Cir. 2014) (Lucero, J., concurring in part, dissenting in part) (acknowledging "the problems with § 924(c)"); *United States v. Hebert*, 131 F.3d 514, 526 (5th Cir. 1997) (DeMoss, J., dissenting in part) (describing § 924(c) sentences as having "draconian impacts"); *United States v. Angelos*, 345 F. Supp. 2d 1227, 1263 (D. Utah 2004) (describing a sentence mandated under § 924(c) as "unjust, cruel, and irrational"). "By mandating such high minimum sentences in 18 U.S.C. § 924(c)(1), Congress has removed the carefully circumscribed discretion granted to district courts in . . . consider[ing] possible mitigating circumstances" when fashioning a sentence. *United States v. Harris*, 154 F.3d 1082, 1085 (9th Cir. 1998). Stripping judicial discretion in favor of harsh mandatory sentences often results in penalties that are not commensurate with the crime.

Such is the case with Hunter. Through section 924(c), Congress has mandated that Hunter spend the rest of his life in prison for arranging the sale of drugs and a gun on two occasions, despite no evidence that he ever used the guns in a violent manner. His criminal conduct is no doubt serious, but it falls well short of being "'so atrocious that society's interest in deterrence and retribution wholly outweighs any considerations of reform or rehabilitation of the perpetrator.'" *Harmelin v. Michigan*, 501 U.S. 957, 1028 (1991) (Stevens, J., dissenting) (quoting *Furman v. Georgia,* 408 U.S. 238, 307 (1972) (Stewart, J., concurring)). In addition, Hunter is young, only 43 years-old, and his criminal history does not depict a man bent on violence. I firmly reject the notion that Hunter is unredeemable. The sentence here is ridiculous in its harshness.

Furthermore, Hunter's life sentence comes at a significant cost. Overly harsh mandatory minimum sentences "ruin lives of prisoners and often their family members." *United States v. Hiveley*, 61 F.3d 1358, 1363 (8th Cir. 1995) (Bright, J., concurring). They strip families of parents, causing children significant emotional and psychological pain. *See* Patricia Allard, *When the Cost is Too Great: The Emotional and Psychological Impact on Children of Incarcerating Their Parents for Drug Offenses*, 50 Fam. Ct. Rev. 48, 51-52 (2012). Indeed, mandatory minimum sentences for drug-related crimes "have had a destabilizing effect on particular communities, largely poor and of color." Eric Holder, Attorney General of the United States, United States Department of Justice, Remarks at the Annual Meeting of the American Bar Association's House of Delegates (Aug. 12, 2013), *available at* http://www.justice.gov/iso/opa/ag/speeches/2013/ag-speech-130812.html.

The economic costs are also extreme. In 2010 alone, taxpayers spent an astonishing $80 billion on corrections. Melissa S. Kearney et al., The Hamilton Project: Ten Economic Facts About Crime and Incarceration in the United States 13 (May 2014), *available at* http://www.hamiltonproject.org/files/downloads_and_links/v8_THP_10CrimeFacts.

pdf. Taking into account Hunter's average life expectancy, taxpayers will spend over $850,000 incarcerating him for the rest of his life. *See* Annual Determination of Average Cost of Incarceration, 78 Fed. Reg. 16711-02 (Mar. 18, 2013) (stating that the annual cost of incarceration of a federal inmate in 2011 was $28,893); Sherry L. Murphy et al., National Center for Health Statistics, National Vital Statistics Reports, V o l .   6 1 ,   N o .   4 ,   a t   3 0 ,   *a v a i l a b l e   a t* http://www.cdc.gov/nchs/data/nvsr/nvsr61/nvsr61_04.pdf (stating that a man of Hunter's age and race is expected to live another 30 years). As I've said, "[t]he public needs to know that unnecessary, harsh and unreasonable drug sentences serve to waste billions of dollars without doing much good for society." *Hiveley*, 61 F.3d at 1365 (Bright, J., concurring).

We have entered a new era in sentencing. As our Attorney General has acknowledged, "too many Americans go to too many prisons for far too long, and for no truly good law enforcement reason." Eric Holder, Attorney General of the United States, United States Department of Justice, Remarks at the Annual Meeting of the American Bar Association's House of Delegates (Aug. 12, 2013), *available at* http://www.justice.gov/iso/opa/ag/speeches/2013/ag-speech-130812.html. Some initial steps are being taken to rectify our excessively harsh drug sentencing regime, as evidenced by reformed federal policies on charging of criminal conduct requiring mandatory minimum sentences and the United States Sentencing Commission's recent decision to permit retroactive reduction of sentences for certain eligible offenders convicted of drug crimes. *See* Memorandum from Attorney General Eric Holder, Jr., on Charging Mandatory Minimum Sentences and Recidivist Enhancements in Certain Drug Cases (Aug. 12, 2013), *available at* http://www.justice.gov/sites/default/files/oip/legacy/2014/07/23/ag-memo-department-policypon-charging-mandatory-minimum-sentences-recidivist-enhancements-in-certain-drugcases.pdf; Press Release, U.S. Sentencing Commission, U.S. Sentencing Commission Unanimously Votes to Allow Delayed Retroactive Reduction in Drug Trafficking Sentences (July 18, 2014), *available at*

http://www.ussc.gov/sites/default/files/pdf/news/press-releases-and-news-advisories/press-releases/20140718_press_release.pdf. But Hunter's sentence indicates that there is much more work to be done. We must do better. I say in this concurring opinion, as I have said in other sentencing opinions that I have written, "Is anyone out there listening?" *United States v. Alatorre*, 207 F.3d 1078, 1080 (8th Cir. 2000) (Bright, J., concurring).

———————————————