# United States Court of Appeals
## For the Eighth Circuit

_____

No. 25-1657
_____

United States of America

*Plaintiff - Appellee*

v.

Da'shawn Natori Domena

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: October 24, 2025
Filed: January 27, 2026
_____

Before LOKEN, BENTON, and SHEPHERD, Circuit Judges.
_____

SHEPHERD, Circuit Judge.

Da'Shawn Domena pled guilty to one count of conspiracy to distribute 400 grams or more of a mixture or substance containing fentanyl. This offense carries a statutory minimum sentence of 120 months' incarceration. See 21 U.S.C.

§§ 841(b)(1)(A), 846.  The district court[1] sentenced Domena to this mandatory minimum after Domena—though otherwise safety-valve eligible—chose not to make a safety-valve proffer.  See 18 U.S.C. § 3553(f).  Domena now appeals his sentence, contending that the mandatory minimum sentence for his offense, as applied to him, violates the Eighth Amendment's ban on cruel and unusual punishment.  Having jurisdiction under 28 U.S.C. § 1291, we affirm.

I.

A federal grand jury indicted Domena and eight others for their roles in a fentanyl-distribution conspiracy.  This conspiracy generally involved shipping fentanyl pills from Phoenix, Arizona, to the Twin Cities, where the conspirators distributed them.  Domena's co-conspirators flew from the Twin Cities to Phoenix, where they bought multi-kilogram amounts of fentanyl pills.  Domena's co-conspirators then placed the pills in stuffed animals to conceal them, packaged those stuffed animals as birthday presents, lined the packages with dog treats (to thwart drug-sniffing dogs from alerting to them), and shipped the packages back to the Twin Cities.  In January and February 2023, police intercepted six parcels connected to the conspiracy.  These parcels collectively contained approximately 280,000 fentanyl pills (weighing a total of approximately 30,851 grams).  But the conspirators successfully shipped other fentanyl packages from Phoenix to the Twin Cities undetected.

In October 2023, law enforcement officers executed a search warrant at Domena's apartment.  They found fentanyl pills on Domena's bathroom floor and in his toilet bowl.  They also located a bag of fentanyl pills in a shoebox in Domena's bedroom, as well as three cell phones, money orders, and money order receipts.

---

[1]The Honorable Jeffrey M. Bryan, United States District Judge for the District of Minnesota.

In his plea agreement, Domena admitted that "[b]eginning in August 2022 and continuing through on or about December 14, 2023, [he] entered into an agreement or understanding with his co-defendants to distribute 400 grams or more of a mixture or substance containing fentanyl." He also admitted that he "furthered the [fentanyl distribution] conspiracy by coordinating the delivery of multiple packages containing fentanyl pills, receiving those packages, and delivering them to other co-conspirators in furtherance of the conspiracy." Domena specifically acknowledged receiving two such packages—one on or about December 20, 2022, and the other on or about January 26, 2023. And he admitted that he knew these packages contained fentanyl when he coordinated their delivery, received them, and delivered them to his fellow conspirators.

After Domena entered his guilty plea, the United States Probation Office prepared a Presentence Investigation Report (PSR). The PSR found that Domena was responsible for 30.8 kilograms of fentanyl. It also concluded that Domena was a minor participant in the offense and that Domena was eligible for other adjustments, such that Domena's adjusted total offense level under the United States Sentencing Guidelines was 26. The PSR further determined that Domena's criminal record fell into Criminal History Category I. The PSR thus calculated that—if no statutory minimum applied—Domena's imprisonment range under the United States Sentencing Guidelines would have been 63-78 months. But because Domena's offense carries a 120-month statutory minimum imprisonment term, the PSR concluded that Domena's Guidelines term of imprisonment was 120 months.

Domena could potentially have avoided the mandatory minimum sentence if he had made a safety-valve proffer—i.e., "truthfully provided to the Government all information and evidence [he] ha[d] concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan." See 18 U.S.C. § 3553(f)(5). But Domena was not inclined to cooperate with the Government. In a social media post dating from before Domena's change-of-plea hearing (but from after Domena had notified the district court of his intent to plead guilty), Domena explained that he viewed the 120-month mandatory sentence for his offense as

minimal and that he did not wish to cooperate with law enforcement, stating, "Ima walk dis 10 down dis shit ain't nun I rather die den talk to these crackas in private." And on December 6, 2024, after Domena had entered his guilty plea, Domena posted a video on one of his social media accounts that contained the following text: "I took my plea the case is over u is not finna be included in no charges of mine or any other charges federally u is not that important."

Domena filed a sentencing statement with the district court arguing that the 120-month mandatory minimum violated the Eighth Amendment. The district court addressed this argument at Domena's sentencing hearing. It concluded that Domena's plea agreement had waived such constitutional challenges. Nevertheless, the district court went on to reject Domena's Eighth Amendment argument on its merits, reasoning that Eighth Circuit precedent foreclosed it.

Also at the sentencing hearing, the district court confirmed Domena's understanding of the safety-valve process and that Domena understood the implications of his refusal to proffer—specifically, that if he declined to cooperate, he would likely receive the mandatory minimum because the district court was not receptive to his constitutional arguments. Domena reiterated his refusal. After "adopt[ing] as the findings of th[e] Court the factual statements contained in the final PSR as well as the calculation of the applicable Criminal History Category and guidelines calculations," the district court sentenced Domena to 120 months' imprisonment, consistent with §§ 841(b)(1)(A) and 846.

On appeal, Domena renews his Eighth Amendment argument. He contends that the district court erred in concluding that his plea agreement waived his right to bring this constitutional challenge. He also argues that the district court erred in rejecting his Eighth Amendment challenge on its merits. In Domena's view, because he had no prior criminal history, played a less significant role in the fentanyl distribution conspiracy than some of his co-conspirators, was not tied to any weapons or violent conduct, was motivated by financial distress, and struggled with chemical dependence, the 120-month mandatory minimum sentence is grossly

disproportionate to the crime he committed and constitutes cruel and unusual punishment as applied to him. The Government argues only that the 120-month mandatory minimum is constitutional as applied in this case.

## II.

Because the Government does not contend that Domena waived his right to appeal the constitutionality of his sentence, we likewise assume that Domena preserved his right to assert his Eighth Amendment challenge on appeal. Cf. United States v. Goodson, 544 F.3d 529, 534 (3d Cir. 2008) (recognizing that an appellate waiver "may have no bearing on an appeal if the government does not invoke its terms"). We "review[] de novo an Eighth Amendment challenge to a sentence." United States v. Scott, 610 F.3d 1009, 1017 (8th Cir. 2010) (citation omitted).

The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. "The Supreme Court has understood this provision to 'forbid[] only extreme sentences that are "grossly disproportionate" to the crime.'" United States v. Rivas, 39 F.4th 974, 977 (8th Cir. 2022) (citation omitted) (alteration in original).

"[S]uccessful challenges to the proportionality of particular sentences are exceedingly rare." United States v. Paton, 535 F.3d 829, 837 (8th Cir. 2008) (citation omitted). And our cases "effectively foreclose[]" Domena's argument "that his sentence is grossly disproportionate." Scott, 610 F.3d at 1018. We have regularly affirmed the constitutionality of mandatory sentences imposed for drug offenses—up to and including mandatory life sentences. See id. (collecting cases); see also United States v. Prior, 107 F.3d 654, 660 (8th Cir. 1997) (characterizing disproportionality review as "quite narrow" and affirming mandatory life sentence imposed pursuant to § 841(b)(1)(A)(viii)); United States v. Collins, 340 F.3d 672, 679-80 (8th Cir. 2003) ("We have held that mandatory minimum penalties for drug offenses do not violate the Eighth Amendment's prohibition of cruel and unusual

punishments. . . . Furthermore, [] a sentence that falls within the range prescribed by statute has never been found to be an Eighth Amendment violation."); <u>United States v. Turner</u>, 583 F.3d 1062, 1068 (8th Cir. 2009) (rejecting a challenge to a 120-month mandatory minimum sentence because "[i]t is clearly established that mandatory minimum sentences are constitutional—even for sentences longer than 120 months"); <u>United States v. Moore</u>, 564 F. App'x 256, 257 (8th Cir. 2014) (unpublished) (per curiam) (describing the constitutionality of mandatory minimum drug sentences as "established by circuit precedent" and concluding that a "mandatory minimum sentence of 120 months [was] not grossly disproportionate to [the defendant's] crime of conspiracy to distribute and possess with intent to distribute cocaine base"). Here, we similarly conclude that this is not one of those rare cases where a disproportionality challenge may succeed.

Domena committed a serious crime: "Possession, use, and distribution of illegal drugs represent 'one of the greatest problems affecting the health and welfare of our population.'" <u>Harmelin v. Michigan</u>, 501 U.S. 957, 1002 (1991) (Kennedy, J., concurring in part and concurring in the judgment) (citation omitted). By his own admission, Domena was involved in a conspiracy endeavoring to move a significant volume of fentanyl into the Twin Cities. Domena admitted to receiving multiple packages that he knew contained fentanyl and forwarding them on to others. And Domena's participation in this conspiracy lasted many months—evidently terminating only after police raided his apartment and located additional fentanyl pills. Though Domena now attempts to downplay the severity of his offense, Domena's sentence is simply not disproportionate to his criminal conduct. <u>See, e.g.</u>, <u>Prior</u>, 107 F.3d at 659-60 (likening narcotics distribution to a "plague" and affirming a mandatory life sentence for methamphetamine distribution, notwithstanding the defendant's contentions that he was an addict and thus less culpable than others). We also note that Domena had the opportunity to potentially avoid the sentence he now contends is cruel and unusual: Domena was otherwise safety-valve eligible but made an eyes-wide-open decision to forego requesting safety-valve relief when he refused to cooperate with the Government. <u>Cf. id.</u> at 660 (noting as an "aside" to an Eighth Amendment analysis that the defendant "ha[d] been given the opportunity to

attempt to reduce [his] sentence himself by providing substantial assistance to the government, and he steadfastly refuse[d] to do so").

While Domena acknowledges our mandatory-minimums authorities, he argues that they no longer control because the Eighth Amendment "must draw its meaning from the evolving standards of decency that mark the progress of a maturing society," Atkins v. Virginia, 536 U.S. 304, 311-12 (2002) (citation omitted), and standards of decency have evolved to the point where society now would regard Domena's 120-month sentence as cruel and unusual. But Domena cites zero authority for this proposition—he fails to point to a single case holding that a statutory mandatory minimum was unconstitutionally applied to a defendant who conspired to distribute an indisputably dangerous drug like fentanyl. Domena's unsupported evolving-standards-of-decency argument does not persuade us. There is nothing unconstitutionally excessive about Domena's 120-month sentence.

III.

For the foregoing reasons, we affirm Domena's sentence.

———————————————